76  141
83  556

## J. L. HURLEY v. BOARD OF MISSISSIPPI LEVEE COMMISSIONERS.

1. EQUITY JURISPRUDENCE. *Commissioners to assess levee damages. Invalid appointment. Laws 1884, pp. 140, 163.*

A court of equity has jurisdiction to enjoin the condemnation of land for levee purposes, under act of 1884, amendatory of the act of the same year creating the board of Mississippi levee commissioners (Laws, pp. 140, 163), on the ground that one of the persons claiming to be one of the three "commissioners to assess levee damages," provided for by said act, is without right to the office, the trial of such right being only incidental to the determination of the question of whether or not complainant's property is about to be taken without due process of law.

2. SAME. *Injunction. Statutory prohibition. Laws 1884, pp. 140, 163.*

The provision of the act of 1884, amendatory of the act of the same year creating the board of Mississippi levee commissioners, that no injunction shall be granted that interferes with the action of said board, does not preclude an injunction to restrain condemnation proceedings under said act, instituted by two of the three "commissioners to assess levee damages," provided for by said act, and another person illegally claiming to be the third member of such commission, the action enjoined not being that of a legally constituted board.

FROM the chancery court of Bolivar county.

HON. A. H. LONGINO, Chancellor.

J. L. Hurley, the appellant, was the complainant in the court below; the levee commissioners were defendants there. Injunction to restrain a proceeding for the condemnation of a part of Hurley's plantation for the enlargement of a levee, on the ground that one of the persons claiming, in such proceeding, to be one of the three "commissioners to assess levee damages," provided for by the act of 1884 (Laws, p. 165), was without right to the office. The appellees, in

their answer, denied this averment, but, on the hearing, it was shown, by affidavits, that the person in question, L. P. Aycock, had been appointed commissioner by the circuit judge of the district after the due appointment and qualification of one Geo. R. Jacobs as such commissioner, presumably on the erroneous conclusion that Jacobs had failed to qualify. Jacobs had acted as commissioner in several cases, but the oath taken and subscribed by him could not be found. The writing signed by the judge, showing Jacob's appointment, had been recorded in the office of the clerk of the circuit court, who had indorsed it as follows: "Filed this twenty-fifth day of March, 1896, and recorded in minute book J, page 91, and said Geo. R. Jacobs has duly taken and subscribed before me oath of office. Chas. T. Christmas, clerk." It denominated him "appraiser to assess levee damages" instead of "commissioner to assess levee damages," as the office is designated in the statute. After appointment, Aycock had acted as commissioner until enjoined. From a decree dissolving the injunction and dismissing the bill, the complainant appealed. The nature of the act of 1884 sufficiently appears in the opinion.

*Chas. Scott* and *E. H. Woods*, for appellant.

Complainant was required to submit to such a condemnation of his lands, simply because he had the right to appeal from such commission to the circuit court. The property was his, and while it could be taken from him for public use, this could not be done except in the manner and through the instrumentality of the officers pointed out by law. Sec. 17, Const. 1890; *Ib.*, Sec. 233; Sec. 3, Acts of 1884, p. 142. The statutory remedy is exclusive. 6 Am. & Eng. Enc. L. (old ed.), 604; 605; *Brown* v. *Beatty*, 34 Miss., 243. Statutory provisions must be strictly followed. 6 Am. & Eng. Enc. L. (old ed.), 607. If Aycock was not a commissioner, neither he nor any commission of which he was a part, could take or condemn complainant's land for levee purposes, and the injunction was properly granted

herein by Judge Whitfield to prevent this wrong. It is an attempt to take private property, "without due process of law," through the instrumentality of an illegal and pretended commission.

This is not an effort by any means, as claimed by appellee, to adjudicate the rights between rival contestants to an office in the chancery court. Any question between Jacobs and the said Aycock on that subject that might arise, would not be settled by the decree in this cause; nor is that the object of the suit, or of the injunction issued herein. It is quite different, being an effort of the appellant to protect himself and his property from condemnation, by and through the instrumentality of a pretended official—that is, through one who is no official at all, one who has no more right to act in such behalf that any other private citizen. However, it frequently happens that the chancery court does interpose, by injunction, for the express purpose of protecting one in possession of an office from the unauthorized interference of some one who tries to usurp the office, until the question can be settled between them by the proper tribunal. *Wheeler v. Board of Fire Commissioners*, 15 So. Rep., 179; *Guillotte v. Poincy*, 6 So. Rep., 507; *Goldman v. Gillespie*, 8 So. Rep., 880; *Reemlen v. Mosby*, 26 N. E. Rep., 718; *Smith v. Board of County Commissioners*, 45 Fed. Rep., 726–728.

We merely cite these authorities to show the error of appellees in contending that a court of equity will never interfere in any matter involving, either directly or indirectly, the right to an office. Here, however, we present an entirely different case. This suit is not brought for the purpose of determining the right to an office. That is merely an incident in the litigation. Its real and only object being the protection of the appellant against the impending condemnation and taking of his property by illegal means. It cannot be that a man's property can be taken from him in the first place, by or through a party pretending to hold office, but who is not an officer in any sense, simply be-

cause there is an ultimate appeal to some legal tribunal.   Or
because, in protecting property interests from such encroach-
ment or destruction, the chancery court, as an incident to the
litigation, would be called on to say that these pretenders to
office were not officers at all, and could not act, therefore, in
the condemnation of private property for the public use.   That
is the point.   It is not enjoining an officer, for Aycock is not
such, either *de jure* or *de facto*, but a private individual; where-
fore, there is no more applicability in defendant's contention
that we cannot enjoin an officer *de facto*, than on the other
point just above mentioned.   We are far from admitting, that
in this peculiar case our remedy at law not being plain, ade-
quate, or complete, that an officer *de facto* might not be enjoined
until the legal officer could act.   But, however that may be,
this point is effectively disposed of by the obvious answer that
Aycock is neither an officer *de jure* or *de facto*, but a mere in-
terloper or usurper, and such the courts enjoin without the
slightest hesitation.   If the effect of the act or crime will be to
impair or destroy property rights, then the chancery court,
without the slightest hesitation, will grant this extraordinary
writ and prevent the act.   *Emperor of Austria* v. *Day et al.*,
3 DeGex, G. & J., 217; *Spinning Co.* v. *Riley*, 6 L. R., Eq.,
551; 1 High on Injunctions, sec. 30, p. 372; 2 Story's Equity
Jurisprudence, sec. 959.

It takes three legal commissioners to form the tribunal, which
alone has the right to condemn land for levee purposes.   It is
true that two of them can act, and, if any two agree, their find-
ing is to be accepted as the official award, subject to the right
of an appeal in either party.   But this does not alter the fact
that the tribunal, in the first place, must be composed of the
three legal commissioners, not of two and one outsider who
has no official status.   *Schenck* v. *Peay*, 1 Dill., 267; *Williams-
burg* v. *Lord*, 51 Me., 599.   Two of the supreme court can
render a judgment or decree, but a litigant would not be com-
pelled to submit his case to two members of that court sitting

with a third party who did not belong to it.    It will be seen at a glance, then, that a party not a member of a tribunal has no right to share in its deliberations, impressing his views on his associates, and probably affecting their decision to some extent in this way to the detriment, it may be, of one party and the advantage of another.

The important question, then, is (in protecting appellant's property), who is the legal commissioner to assess levee damages, Aycock or Jacobs?    Aycock is not an officer *de jure*, if defendant's contention for a strict construction of the law is accepted: (1) Because he did not take the oath prescribed by the statute.    (2) The record of his appointment and oath does not comply strictly with the requirements of said act.    (3) Because his pretended appointment was not recorded on the minute book of the circuit court, as the law required, within a reasonable time—over six months elapsed.    (4) Jacobs having been appointed, and having entered upon the discharge of his official duties, could not be removed except by judicial proceedings.    Aycock's pretended appointment was void, therefore, whether Jacobs qualified according to law or not.    *Jacques* v. *Little*, 33 Pac. Rep. (Kan.), 106.    (5) Aycock could not be the commissioner *de jure*, in any view of the matter, because Jacobs was the legal commissioner, duly appointed and qualified.    (6) Nor could Aycock be an officer *de facto*, because Jacobs, the officer *de jure*, was in the county, and, therefore, in the possession of the office all the while, and there cannot be an officer *de facto* under such circumstances.    *School Dist.* v. *Smith*, 32 Atl. Rep. (Vt.), 484; *Woods* v. *Inhabitants of Bristol*, 24 Atl. Rep., 866; *Cohn* v. *Beal*, 61 Miss., 398.

One chosen school district agent, at an election wholly void, is not an officer *de facto*, although he exercises the duties of the office.    24 Atl. Rep., 866; *State* v. *Daucher*, 56 N. W. Rep., 142.

There can be no such thing as a *de facto* officer where there is no office to fill.    There was none to fill here because Jacobs had been appointed in March, 1896, whereupon he promptly

qualified and took possession of the office.  *State* v. *Lail*, 16 R. I., 620.   There can be no vacancy in an office so long as there is a person in possession of it legally qualified to perform its duties.

We have seen that Aycock could not be a *de facto* officer because Jacobs was the *de jure* commissioner in possession of the office.   But even if this was not the case, and Aycock had been a *de facto* officer, that could not be interposed as a defense to this, a direct proceeding, attacking his right to condemn complainant's lands, and in this way and for this purpose only attacking his right to the office itself.

A *de facto* officer cannot justify under his office.   *Cooleridge* v. *Bingham*, 1 Allen (Mass.), 333; *Schlemeker* v. *Riseby*, 38 Am. Dec., 100; note to *Hildreth* v. *McIntyre*, 19 Am. Dec., 68; *Case* v. *Hall*, 21 Ill., 635.

It was suggested, we believe, by counsel that the appointment was illegal because it used the word "appraiser" to assess levee damages, instead of "commissioner" to assess levee damages.   This objection was so manifestly frivolous, however, that it was not pressed in argument, and, we imagine, will not be presented in this court.   *Taft* v. *Barrett*, 58 N. H., 447.

Without dwelling on this point, then, we proceed to discuss the proposition as to the oath, and, in answer to defendant's contention, we submit the following points:

(*a*) No written oath was required.   This is evident from the following.   There is no provision to that effect in the statute. No suggestion or requirement as to its being filed or recorded, or as to its custodian; no requirement for its being copied on the minutes.   It will be especially observed, that while the statute is very particular and minute in its requirements, as to what shall be done with the appointment, not one word is said about the preservation or disposition to be made of any written oath.   The idea of a written affidavit is negatived too by the requirement that the clerk shall certify, not on the oath itself, but

on the original appointment, that the oath was taken and sub-scribed by the commissioner. Why should this be done? Why should he certify to this fact on some other paper if it was the intendment of the law that the written oath was to be made and signed? Because in such event the oath would always be there to answer for itself.

(*b*) But if we should concede that a written oath was required, it was not necessary to affix affiant's signature thereto. By "subscribing" was simply meant that affiant should simply assent or approve the oath, as we say in every-day conversation, "We subscribe to that sentiment." Webster's Dictionary defines the word assent, "to agree to."

(*c*) If mistaken in both respects, still the failure to subscribe is not fatal. An oath administered substantially, according to the prescribed form, is valid. The object of the law in requiring an oath is twofold—to show the acceptance of the office and to charge the conscience of the officer with the proper performance of his official duties. The material thing, then, is to take the oath, and the failure to subscribe it is an immaterial omission, not a matter of moment. *State* v. *Mayer*, 90 N. E. Rep., 676; *In re Foley*, 23 N. Y. Sup., 611; *Dunlap* v. *Clay*, 65 Miss., 454; *Redus* v. *Wofford*, 4 Smed. & M., 591. This last case was under Howard & Hutchinson's code, where it was required that the affidavit for an attachment should be taken and subscribed by the affiant, and the failure to subscribe was held immaterial.

(*d*) But losing sight of the foregoing, and turning to the record, the court will discover that the oath was subscribed, and that Jacobs' signature was thereto affixed. This effectively cuts the ground from under defendant's feet. The statute (section 3 of the levee board act) under discussion requires, as we have seen, that the circuit clerk should indorse on the appointment an official statement that the appointee had taken and subscribed the oath before him. This indorsement or certificate of the clerk, when made, raises, we submit, not a mere pre-

sumption of fact, which might be open to rebuttal on proper proof, sufficiently strong, but amounts to an exclusive presumption of law that the oath is subscribed.    See sec. 3, acts of 1884, p. 164; 19 Am. & Eng. Enc. L., pp. 38, 39; 1 Greenleaf on Evidence, secs. 14, 16, 19, 32; *Johnston* v. *Wallace*, 53 Miss., 331, for somewhat analogous instance; *Redus* v. *Wofford*, 4 Smed. & M., 591.

Equally untenable is the contention that no injunction could be issued in any event, because section three of levee act above mentioned inhibits it.    It is true there is substantially such a provision in the law mentioned, but this manifestly is inoperative the moment the levee board violates the law by refusing to summon the legal commissioners therein mentioned.    The act will be so construed by the court, and otherwise would be unconstitutional and void.

*Walter Sillers* and *Thomas S. Owen*, for appellees.

The contentions upon which appellees rely in their brief are as follows:

1. The injunctions were wrongfully sued out and issued for the following reasons, to wit: (1) Because two of the commissioners summoned, Peterson and Lamb, are admitted to be legal commissioners, and the law constitutes them a quorum to transact business, and Aycock, if not a *de jure* officer, was a *de facto* officer, and his acts, as such, while acting with Peterson and Lamb, would have been valid.    This legal commission could have assessed the damages and made the award, and such award would have been valid and binding, and, if appellant had felt aggrieved, he had his right to an appeal to the circuit court, and trial before a jury, and right to a review of the proceedings by this court.    Therefore, if appellant had sustained damage by the award, it could not have been irreparable, as alleged in his bill.    In order to sustain an injunction, complainant must show that he would have sustained damage by reason of Aycock's acting, and by failure to have Jacobs acting as

commissioner, and the damage must be irreparable; and complainant has no remedy at law whereby his wrongs can be redressed.   (2) A legal commission having been summoned, they could not have been enjoined without violation of section 3 of the act of 1884 (act of 1884, section 3, p. 164 *et seq.*), which act prohibits an injunction to prevent the taking by the levee board of land condemned for levee purposes, and an evasion of that provision of the law and the constitution prohibiting an injunction after the land is condemned.

2. The chancery court has no jurisdiction, because this is virtually a proceeding to contest the right of Aycock to the office.   The decree of the court necessarily settles the right of Jacobs and Aycock to the office, which the court has no right to do by injunction because Jacobs has never been appointed to any office existing under the laws of the State of Mississippi, he having been appointed *appraiser* to assess levee damages, and it is sought by appellant's bill to have him instated as a commissioner to assess levee damages.

Aycock was duly appointed and qualified and went into the occupancy of the office, and was, at the time of the issuance of the injunction, and for six or seven months prior thereto, in the open and notorious discharge of the functions of the office, and was recognized by the levee board and by the people whose lands were taken for levee purposes by the board of supervisors, who paid his mileage and fees, and by the public generally, as the duly and legally appointed and qualified commissioner to assess levee damages for Bolivar county.

Jacobs was never in the occupancy of the office, never exercised any of the functions thereof, or attempted to do so, prior to, or after, the expiration of his term on the second Monday of July, 1896.   If Jacobs was ever appointed to the office of commissioner to assess levee damages, which we deny, he has never qualified as such according to law.   The law requires the oath to be taken and subscribed in order to authorize commissioners to act, and Jacobs never subscribed the oath.

It is not shown that Jacobs is a freeholder of Bolivar county. The appointment states that Jacobs is a freeholder, but does not say he is a freeholder of Bolivar county, as the law provides he shall be, in order to hold such office.

Appellees say the injunction herein was wrongfully sued out, because the law constituting two of said commissioners to assess levee damages a quorum. Acts of 1884, p. 104 *et seq.* And the bill showed that Peterson and Lamb had been summoned, with Aycock, as two of said commissioners, to assess and award appellees' damages. The proof shows that Aycock had been appointed, and he had qualified as provided by law, and had entered at once upon the discharge of the duties of his office; was recognized by the levee board, the landowners whose property was taken for levee purposes, the board of supervisors who paid his fee and mileage, and the public generally. See petition of November, 1890, and June, 1897, certified copies of award to Benjamin Graham and others, and receipts on back of award showing payment, the allowance of fees and mileage allowed by the board of supervisors. In order to be entitled to extraordinary remedy by injunction, appellant must show that he would sustain injury by reason of Aycock acting as one of the commissioners to assess and award damages to him for lands taken for levee purposes, and that the injury is irreparable. High on Injunctions, p. 29 *et seq.*; 10 Am. & Eng. Enc. L., 782. The injury is not irreparable. The law provides a plain, adequate remedy, where all wrongs can be redressed, by giving either party the right to appeal to the circuit court, with further right of appeal to this court. This remedy has many times been availed of by parties whose property was taken. Condemnation of land by commissioners is intended to be a speedy means by which the levee board can secure material for levee construction for the protection of the lives and property of the people of the levee district. Emergencies are ever occurring where protracted delay would be ruinous. The board is restricted to this mode of procedure. The remedy is exclu-

sive of all others.   The act creating this commission to assess
levee damages provides that no injunction shall be granted to
prohibit the levee board from taking the lands when condemned
by the commission.   Acts 1884, p. 164 *et seq.*   This law has
been recognized and adopted by the constitution of the state.
Sec. 233, Constitution.   The enjoining of the commissioners
for some omission in appointments or qualification is an evasion
of the provisions of the act, and indirectly a violation of that
clause of the constitution recognizing and adopting the provis-
ion of said act of 1884 as a method of taking land for levee
purposes.

Aycock was appointed by the proper authority, took and
subscribed the oath of office, was recognized by the levee board
authorities, property owners, the county authorities, and people
generally, and went actively into the performance of the duties
of the office, and had been so acting six or seven months when
enjoined by appellant.   Jacobs' term had expired on the second
Monday of July, 1890, he never acting as commissioner before
or after that date.   Even if he was duly and legally qualified,
he did not hold office, because he had never acted; he was not in
office exercising its functions, there was nothing for him to hold
to.   If he was not a *de jure* officer because of his failure to
qualify, he certainly never became a *de facto* officer, for up to
the time of this injunction he had never acted, and, therefore,
could not hold over as such, because he was not in the office
performing its duties.   If he did hold over, how did he happen to
hold on to Aycock's office any more than to Lamb's?   There were
two vacancies.   Aycock and Lamb were both appointed on the
same date, at the same time.   The appointment of Aycock does
not show that he was appointed to fill any place ever occupied
by Jacobs.   Judge Montgomery's testimony is incompetent to
show that Aycock was appointed to Jacobs' place.   It is vague
and uncertain, if competent; only "an impression," because
Aycock lived near Jacobs.

The terms of all commissioners had expired on the second

Monday of July, 1890, and Aycock, as well as Lamb, was appointed generally as a commissioner to assess levee damages for Bolivar county. By what authority of law, right or reason does Jacobs single Aycock out and tell him to get out, or appellant to step in and take up Jacobs' fight, and say you shall not assess any damages? The court should not establish a precedent by which greedy or capricious landholders could stop levee building by picking flaws in appointments of commissioners. An injunction that would work great harm to one party, without corresponding benefit to the other, should be refused. 19 Fed. Rep., 641; 10 Am. & Eng. Enc. L., p. 783 *et seq*. An injunction will be refused where it will work an injury greater than the wrong to be redressed. 18 L. R. A., 702. So long as the legal remedy is adequate, equity cannot interfere. 22 L. R. A., 233 (*Carney* v. *Hadley*, 32 Fla., 344).

3. A decision for plaintiff in this case puts Aycock out of the office. The suit is a proceeding to settle the right to office between Jacobs and Aycock, and, for that reason, the injunction should be dissolved, and appellant's bill dismissed. *Ex parte Wimberly*, 57 Miss., 437; *Guillotte* v. *Poincy*, 5 L. R. A., 403. "The title to office cannot be tried in replevin." *Hallgren* v. *Campbell*, 9 L. R. A., 408.

Jacobs was not in the occupancy of the office performing its functions, and Aycock was. Jacobs was never appointed to the office. His appointment shows that he was appointed as an "appraiser" to assess levee damages. There is no such office existing under the laws of the State of Mississippi. Section 3 of the acts of 1884, page 164 *et seq*., constitutes this office to be known as "commissioner to assess levee damages." The constitution adopts this act, thereby making the office of commissioner to assess levee damages an office provided by the constitution, and an appointment as appraiser to assess levee damages no more authorizes appointee to be and act as commissioner to assess levee damages than an appointment as mayor of a town would authorize the appointee to act as justice of the peace.

Jacobs did not qualify as the law requires.   He did not sign the oath of office, which, we contend, is, under statute, an absolute necessity to his qualification and holding of the office.   The statute provides that "the appointment by said judge shall be duly recorded in the minute book of his court by the circuit clerk of the proper county, and he shall certify on the original appointment that it has been so recorded, and that said commissioner has duly taken and subscribed before him the oath required by the law.   The record of his said appointment, as aforesaid, after the taking and subscribing of the oath herein required, shall constitute the qualification of office by said commissioners, and authorize them severally to enter upon the discharge of the duties of the same."   Acts 1884, pp. 164 *et seq*: "The better practice requires that an affidavit should be signed in order to more readily identify it, but in the absence of some positive statute or rule of court, this is not necessary."   1 Enc. Plead. & Prac., p. 315.

In the case under consideration, the signature of the official qualifying is required by statute.   More than this, it is necessary as evidence of his title to the office.

"The record of his said appointment as aforesaid, and the taking and subscribing the oath herein required, shall constitute the qualification of office by said commissioners, and authorize them severally to enter upon the discharge of the same."   Acts 1884, p. 165.   Commissioner not qualified and cannot enter on duties of office until all the prerequisites of this statute are complied with.   The record of appointment, and the taking and subscription of oath "herein required," shall authorize them to enter upon the discharge of the duties of the office.

"Where the statute requires a subscription to the affidavit, the absence of it renders the affidavit a nullity."   *Nave* v. *Ritter*, 41 Ind., 301.

"And it seems that a subscription is required where a form of the affidavit is given, leaving a blank space for the signature."   *Cohen* v. *Mance*, 28 Ga., 27.

In Texas, now, by statute, the affidavit must be signed. *Gorden* v. *State*, 29 Texas App., 410.

In Iowa an affidavit is not complete unless signed by the affiant, even though the statute does not require a signature. *Lynn* v. *Morse*, 76 Iowa.

In Missouri an affidavit must be signed by the affiant. *Norman* v. *Born*, 36 Mo. App., 419; *Hargadine* v. *Van Horn*, 72 Mo., 370.

Qualification for office means the performance of the acts which the person chosen is required to perform before he can enter into office, the term "qualified," when in this connection, importing that the person chosen has complied with the requirements of the law.    19 Am. & Eng. Enc. L., 440.

Qualification held to be a condition precedent to the exercise of the functions of the office as an officer *de jure. Id.*

An oath of office need not be in writing if the statute does not, in express terms, require it, if the facts appear that the officer was regularly sworn. *Id.*

Inferentially, if the oath is, by statute, required to be in writing, it must be in writing; and if the written oath is required by law to be signed, it must be signed, and the party attempting to qualify fails to subscribe the oath, when required to sign by statute, fails to qualify, and cannot enter upon the performance of the duties of the office as a *de jure* officer.

A memorandum, "Sworn before me this the thirty-first of December, 1887," signed by the officer before whom the oath purported to have been taken, is not sufficient under a statute which requires that the oath shall be taken in writing, and taken and subscribed by the officer. *Halbeck* v. *Mayor, etc., of New York*, 10 Off. Pr. (N. Y.), 439; 19 Am. & Eng. Enc. L., p. 444, note 4.

"Sworn before me, thirty-first of December, 1887," is not a sufficient oath.    Throop on Public Officers, p. 179.

His rights to continue to hold the office depended upon statu-

tory conditions, one of which was the taking of the oath of office. Throop on Public Officers, p. 181.

In the case under consideration, Jacobs' right to continue to hold the office depends upon the statutory conditions that he "take and subscribe the oath of office." A careful review of the authorities leaves no doubt of the fact that the subscription of the oath was necessary to Jacobs' qualification, and a review of the testimony leaves no doubt of the fact on the unbiased mind that he failed to subscribe the oath of office.

Argued orally by *Charles Scott*, for appellant, and by *Walter Sillers*, for the appellees.

WHITFIELD, J., delivered the opinion of the court.

We think the clear preponderance of the testimony shows that Jacobs subscribed his oath, and we hold he was, and is now, the legal commissioner.    Section 3, Laws 1884, p. 165. Aycock was not a commissioner *de jure* or *de facto*.

The contention that this is an effort to try a contested election case in chancery is unsound, and arises from a misconception of the scope and purpose of the bill.    The ground of equitable jurisdiction invoked is the power of the court by injunction to prevent the taking of the citizen's property without due process of law, by an illegally constituted tribunal.    In principle, the case is to be tested by the same rules which would apply if three persons, clear usurpers, were being called on to act as the commissioners to assess damages.    It can make no difference as to the legal constitution of the tribunal, that one, instead of three, is objected to as an illegal commissioner.    Two legal commissioners must concur in the assessment of damages, and, where there is one illegal commissioner, his concurrence with one of the legal commissioners against a dissenting legal commissioner would clearly not make the award legal, on the idea that two make a quorum.    It requires the concurrence of two legal commissioners to make a valid award, as well as the

presence of two legal commissioners to make a quorum. Two might constitute a quorum, just as if the illegal one were not there; but when one of the two legal commissioners differs in the matter of the award, the illegal commissioner adds no validity to the judgment of either. His action is *brutum fulmen*— a nullity.

Section 3 of the act of 1884 prohibits the granting of an injunction which interferes with the action of a legally constituted board. Granted that the commissioners are legal commissioners, no injunction may be issued to restrain them. But it was never intended that three persons, never legally appointed, clear usurpers, could, because called on to act as the legal board, not be enjoined from proceeding with the exercise of usurped authority. The mere fact that, incidentally to the determination of the main question, whether the citizen's property is being taken without due process of law, it becomes necessary for the court to decide—not for the purpose of entitling either to the office, but merely for the purposes of this suit— whether Jacobs or Aycock was the legal commissioner, in no way defeats the jurisdiction to administer the equitable relief, the basis of the bill. Such decision, for the purpose of this suit, does not settle the right to the office in the sense that a judgment in a contested election case would at law, where the right to the office was the only thing to be settled.

The principle is very clearly stated in *Johnston* v. *Jones*, 23 N. J. Eq., 225, 226. The court say—admittedly one of the ablest equity courts in the union: "It is clear that a court of equity has no jurisdiction to remove an officer of a corporation from an office of which he has possession, or to declare the forfeiture of such office. Its decree will not, like the judgment of a court of law, operate *in rem*, and remove or oust anyone from an office which he in fact holds. When the object is simply to determine the regularity of an election or to declare an office to which anyone has been duly elected forfeited, a court of law is the only competent tribunal." But, "if the

question of the legality of an election, or whether a certain person holds such an office, arises incidentally in the course of a suit of which equity has jurisdiction, that court will inquire into and decide it as it would any other question of law or fact that arises in the cause. But the decision is only for the purpose of the suit. It does not settle the right to the office or vacate it if the party is in actual possession.''

It is obvious that an appeal in such a case is wholly inadequate, and that there is no adequate remedy at law.

The general principle upholding the jurisdiction of the court may be found in sections 668 and 681 of 2 Beach's Modern Eq. Jur. In the former section it is said: ''And upon similar broad, equitable principles, where irreparable injury is threatened to the property of an individual by the illegal acts of public officers, as, for example, where they threaten to appropriate private property to a public use in violation of law, the person to whom the injury is threatened may have an injunction to restrain such illegal acts,'' citing *Smart* v. *Hart*, 75 Wis., 471, where it is very pertinently observed that, '' however unjust or unwise it may be on the part of the plaintiff to stand in the way of a public improvement which is greatly desired by the people, this fact can have no force in conferring a right upon the defendants which is expressly denied them by statute,'' such an act being '' a usurpation of power and wholly void.'' And in section 681, *supra*, it is stated that '' where the power of eminent domain has been delegated to public officers or others who are threatening to make a permanent appropriation of private property to public uses in excess of the power granted or without complying with the conditions upon which the right to make the appropriation is given, a court of equity will prevent the threatened wrong without regard to the question of improbable damages or the existence of legal remedies which may afford a money compensation,'' citing many authorities.

*The decree is reversed, and decree entered here perpetuating the injunction.*