**WALKER et al. v. HOPPING.** (No. 1728.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 20, 1920. Dismissed on Rehearing Nov. 24, 1920.)

1. **Elections** ⟝154(3) — **Injunction will issue to prevent usurping political county committee from trying contest.**

Since injunction may issue to prevent the county executive committee of a party from acting in a matter outside its jurisdiction, it may also issue to restrain those who are usurping the office of such committee from hearing a primary election contest, which would be within the jurisdiction of the legal committee.

2. **Officers** ⟝82—**Title to office determined as incidental to injunction against usurpers.**

Though injunction will not be granted to determine the right to an office, the right of parties claiming to hold such office may be determined incidentally in trying the right of plaintiff to an injunction to prevent usurpers to that office from determining a primary election contest.

3. **Elections** ⟝121(2)—**Party county executive committeemen not "officers," holding over until successors qualify.**

Const. art. 16, § 17, requiring officers to perform their duties until their successors shall be duly qualified, has reference to public or governmental officers, and officers of a political party, though provided for by statutory law, are not to be regarded as public or governmental officers, so that the provision does not authorize the county executive committee of a party to hold over until their successors are qualified.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Officer.]

4. **Elections** ⟝121(2) — **Political executive committeemen hold over until successors qualify.**

Even in the absence of any express provision of the governing law, officers, whether state, municipal, corporation, or otherwise, hold over until their successors are chosen and qualified, and this rule applies, in the absence of a regulation or usage of a political party, to the county executive committeemen of the party.

5. **Elections** ⟝121(2) — **Committee chairman hold until elected successor accepts.**

The county chairman of a political party who was elected under the provisions of Rev. St. 1911, art. 3107, holds over after the election of his successor until the successor qualifies, which occurs, since there is no provision for formal qualification, when the successor accepts the office either expressly or by entering upon its duties.

6. **Elections** ⟝121(2)—**Petition to enjoin party chairman from acting after election of successor, not negativing party rule justifying defendant's acts, is insufficient.**

A petition, seeking to enjoin a party chairman from acting as such after the election of his successor who had not accepted, is insufficient, where it does not negative the existence of a party usage or rule that such officer hold over until his successor qualified, even if that office were not subject to the general rule to that effect.

7. **Elections** ⟝154(10)—**Preponderance of evidence held to show elected county chairman did not accept.**

Evidence that the county chairman, elected at a primary, stated he would not accept because he could not hold such office while postmaster, held to show by a preponderance thereof, notwithstanding some testimony to subsequent statements by him that he would act, that he had never accepted the office.

8. **Appeal and error** ⟝931(4)—**Court will not be presumed to have found fact against preponderance of evidence.**

It will not be presumed, in support of an injunction against acts of a county chairman after the election of his successor, that the court found that the successor had accepted the office, where such finding would be against the preponderance of the evidence, and especially where the injunction was also issued against other officers, which indicated that it was not based on that finding.

9. **Elections** ⟝121(2)—**Appointment by executive committee requires action by majority of committee.**

Rev. St. 1911, art. 3107, providing that vacancy in the office of chairman or member of the county committee of a party shall be filled by a majority vote of said executive committee, contemplates an act of the committee as a body, and, in the absence of some provision of law to the contrary, it would take a majority of the members of such committee to constitute a quorum which could act as the committee, so that appointments to fill vacancies made by only one committeeman are invalid.

*On Motion for Rehearing.*

10. **Appeal and error** ⟝1108—**Costs** ⟝241— *Injunction against contest of primary election is moot after general election and each party pays costs.*

Where, pending a motion for a rehearing on appeal from an injunction to restrain the party committee from entertaining a contest of the primary election, the general election was held, the case has become moot and will be dismissed; each party under Rev. St. 1911, art. 2030, paying the costs incurred by him.

Appeal from District Court, Lamb County; R. C. Joiner, Judge.

---

Suit by R. C. Hopping against H. G. Walker and others, to restrain persons claiming to act as a party executive committee from determining a contest of the result of a primary election. From an order denying defendant's motion to dissolve the temporary injunction, defendants appeal. Case dismissed on motion for rehearing because the questions had become moot.

Kinder & Russell and Williams & Martin, all of Plainview, for appellants.

S. G. Bratton, of Clovis, N. M., and H. C. Randolph and P. B. Randolph, both of Plainview, for appellee.

BOYCE, J. This is an appeal from an order of the district court, overruling a motion to dissolve a temporary injunction, by the terms of which, injunction certain persons, who were purporting to act as the Democratic executive committee of Lamb county, Tex., in the matter of determining a contest of the result of the primary election of July 24th, as to the nomination of the party's candidate for county judge of said county, were restrained from proceeding with the determination of said contest.

The plaintiff, R. C. Hopping, brought the suit against L. S. Kennedy, W. B. Eby, M. E. Cleavenger, J. E. Brazeal, and H. G. Walker, alleging in his original petition that at the primary election of July 24, 1920, he was duly elected as the Democratic nominee for the office of county judge of said Lamb county; that the said H. G. Walker was the rival candidate for such nomination and thereafter filed a contest with the defendant L. S. Kennedy, as chairman of the executive committee of said county, and that the said L. S. Kennedy, claiming to act as such chairman, and W. B. Eby, M. E. Cleavenger, and J. E. Brazeal, claiming to act as executive committeemen from precincts 1, 2, and 3 of said county, were proceeding, over plaintiff's protest, to hear and determine such contest; that such persons had no right to act in such capacity and determine such contest, because of the following facts: That they had each been elected, to the respective offices stated, in the primary election of 1918; that at the primary election of 1920 K. K. Simpson had been duly elected, and his election certified as county chairman of the Democratic party, and had, upon the assembling of said committee to hear said contest, appeared before it and testified that he was ready and willing to proceed with the trial as county chairman; that R. P. Stripe was elected committeeman from precinct No. 3, and the defendant Brazeal was willing to desist from further action as committeeman from said precinct; that at said election of 1920 no committeemen were elected from precincts 1 and 2, to succeed the said Eby and Cleavenger; and that their offices were vacant and should be filled by appointment by the said Simpson and Stripe. Plaintiff further alleged that he would be greatly damaged and harassed by the unlawful action of said parties in the hearing and determination of said contest, etc. The court issued a temporary writ of injunction on the presentation of the petition, restraining the defendants from proceeding with the hearing of said matter. The defendants, except Brazeal, answered, by general demurrer and special answer, in which they set out in substance the same facts as to the election of the defendants Kennedy, Eby, and Cleavenger, at the 1918 primaries, and the failure to elect committeemen from precincts 1 and 2 at the 1920 election as were alleged in plaintiff's petition; that the said Simpson was elected county chairman but had refused to act and had not accepted said office. The defendants thereupon moved to dissolve the injunction, supporting the motion to dissolve by affidavits setting out facts in detail in support of the allegations made in the special answer. The plaintiff, prior to the hearing of the motion, filed a supplemental petition, in which it was alleged that the said K. K. Simpson had finally, upon the granting of the injunction, refused to serve as county chairman, and that since such time a duly constituted executive committee from Lamb county had been appointed, as required by law, and had qualified, and were serving in such capacities; that said committee was composed of H. B. Maxey, J. O. Crawford, R. P. Stripe, C. E. Cooper, and E. B. Andrews; and that said executive committee had elected L. B. Seaton as county chairman.

A hearing was had on the motion to dissolve and affidavits and evidence introduced thereat, the substance of which we will detail later, the motion was overruled, and this appeal is from this order of the court.

The questions presented for decision on this appeal are: (1) As to the right of the district court to interfere by injunction with the proceedings of said parties, purporting to act as the executive committee of the Democratic party in passing on said contest. (2) As to the right of the old committeemen to hold over until the election or appointment of and acceptance of the office by a successor. (3) A determination of the issues of fact as to the acceptance or refusal of the office by K. K. Simpson, who had been elected as county chairman. (4) Whether the committee alleged to have been appointed after the issuance of the injunction were lawfully appointed and the effect of such proceeding on this suit.

[1] As to the first question, we think, if it be true, as the appellee claims, that the members of the so-called executive committee were usurpers, acting in violation of law, the appellee would have the right to invoke the aid of the courts to prevent such persons from acting so as to injuriously affect the plaintiff's rights secured by law. The power of the courts in such cases was thoroughly considered by the Supreme Court, in the case of Gil-

more v. Waples, 108 Tex. 167, 188 S. W. 1037, and we do not consider it necessary to add anything to what was there said. If, as held in the case referred to, the courts will lend their protection against an unauthorized act of a duly constituted executive committee of a party, we think it follows that they could act to protect the rights of a party against the acts of an unlawful or unauthorized committee. It seems to us to be a question as to whether it could be said under the provisions of the law these persons were not really committeemen at all, but were usurpers, acting in violation of law. The provision of the statute relied on by the appellee, in support of his contention that such persons were mere usurpers, furnishes the basis of the decision of the second question suggested and will be further discussed in the consideration of said issue.

[2] To the appellant's suggestion that an injunction will never be allowed by the courts to be used to determine the right of a party to an office, we think it a sufficient reply to say that the right of the acting committeemen to hold the offices in question in this suit is merely an incident in the determination of the plaintiff's rights, the purpose of the suit itself not being to determine the title of the respective parties to the office of executive committeemen, except as that matter incidentally affects the rights of the plaintiff. In such cases the courts will determine whether the persons purporting to act in some official capacity are really entitled to act as such, or are mere usurpers, without any right to act so as to affect any of the plaintiff's rights. High on Injunctions (4th Ed.) vol. 2, par. 1315a; Hurley v. Levee Commissioners, 76 Miss. 141, 23 South. 580; Callaghan v. Tobin, 40 Tex. Civ. App. 441, 90 S. W. 328. This brings us to the consideration of the concrete question as to whether the persons acting as committeemen were acting in violation of the law, and this may be appropriately considered under the discussion of the second issue.

The only provision of the statutes to which our attention has been called relative to the election, appointment, term of office, etc., of the executive committeemen of the county, is article 3107, which is as follows:

"There shall be for each political party required by this law to hold primary elections for nomination of its candidates, a county executive committee, to be composed of one member from each voting or justice precinct in such county, as the party executive committee may direct, the members of which county executive committee as well as county chairmen and the precinct chairman for each voting or justice precinct, as the case may be, shall be elected by the qualified voters of the county on primary election day; provided, that, in case of a vacancy occurring in the office of chairman, county or precinct, or any member of such committee, such vacancy shall be filled by a majority vote of said executive committee."

[3] Appellant first advances the proposition that the executive committeemen provided for by this article of the statute are officers within the provision of article 16, § 17, of the Constitution, reading:

"All officers within this state shall continue to perform the duties of their offices until their successors shall be duly qualified."

We think that the term "officers," referred to in the Constitution, has reference to public or governmental officers, and that the officers of a political party, although provided for by statutory law, are not to be regarded as public or governmental officers. Coy v. Schneider, 218 S. W. 479; Waples v. Marrast, 108 Tex. 5, 184 S. W. 180, L. R. A. 1917A, 253; Walker v. Mobley, 101 Tex. 28, 103 S. W. 490. A reference to the decisions cited, we believe, will render a further discussion of this proposition superfluous.

[4] But it seems to be the general rule adopted by the American courts and applied to various classes of officers—state, municipal, corporation, etc.—that, even in the absence of any express provision of the governing law, such officers hold over until their successors are chosen and qualify. R. C. L. vol. 22, p. 555; Dillon on Municipal Corporations (5th Ed.) pars. 411, 412; Robb v. Carter, 65 Md. 321, 4 Atl. 282; Fletcher's Cyclopedia of Corporations, par. 740. We see no reason why, in the absence of a regulation or usage of the party to the contrary, the rule is not applicable to the present case. Under its application, the defendants Eby and Cleavenger would have been, at the time of the issuance of the injunction, rightfully acting as executive committeemen of precincts 1 and 2, no successor having been chosen in any way to succeed them.

[5] As to the Chairman Kennedy, a different state of facts existed between a successor had been chosen, and a controversy is presented by the pleadings as to whether such successor had accepted the office. Assuming for the present that the evidence is sufficient to show that Simpson had not accepted—a matter which we discuss in detail later—we will first consider the effect which such fact would have on the right of the said Kennedy to continue in the office pending the election or appointment of some one who was willing to accept it. Reference to the authorities cited will show that the general rule is that the old officer holds over until the qualification of the successor. Of course, the rule was adopted in cases where there was some prescribed formality for the induction of the incumbent into the office; but we are dealing with a case where nothing seems to be required of the one elected before entering upon the discharge of his duties. In such case the acceptance of the office is evidenced merely by an entrance upon the performance of the duties thereof. In reference to corporate officers, it is held that one elected or appointed

to an office does not become an officer until acceptance of the office. Fletcher's Cyclopedia of Corporations, par. 1785; Cyc. vol. 10, p. 740; Bramblet v. Commonwealth Land & Lumber Co. (Ky.) 83 S. W. 599. It seems to be the rule that an acceptance of the office may be presumed in the absence of evidence to the contrary and that no formal acceptance is necessary, the entry upon the duties thereof being sufficient. The reason for the rule that an officer ordinarily holds over until the qualification of his successor is based on convenience, its object being to prevent the evils that would result from the fact that otherwise a situation might come about where there would be no one to perform the functions of the office to the detriment of the public or parties interested, it being evidently to the interest of all such parties that no such hiatus occur. Qualification is a formal method of denoting acceptance of the office, and the reason for the general rule logically pursued would seem to us to lead to the conclusion that in cases of this kind the old officer should hold on until the acceptance by his chosen successor.

[6] There is another theory upon which we believe a conclusion as to this question may be based. We take it that, as there is no express provision of the law in respect to this matter of holding over, it might properly be provided for by party regulation or usage. Gilmore v. Waples, 108 Tex. 167, 188 S. W. 1040; Beene v. Waples, 108 Tex. 140, 187 S. W. 193. If the plaintiff's pleadings are to be taken as relying merely on the fact that the election of Simpson would render illegal any further acts of the old chairman, even if Simpson did refuse to serve, then we think the petition and facts offered in support thereof would be insufficient, in that it was not negatived that there was a party rule or usage that permitted the old chairman to discharge the functions of the office until the acceptance thereof by a successor. A petition for injunction should "negative every reasonable inference arising from the facts so stated, from which it might be deduced that [the plaintiff] might not, under other supposable facts connected with the subject, thus be entitled to relief." Gillis v. Rosenheimer, 64 Tex. 243. This decision has been followed by a long line of cases. Our conclusion is that at the time of the issuance of the injunction Eby and Cleavenger were rightfully acting as committeemen and that Kennedy was also rightfully acting as chairman, if the evidence shows that Simpson, who had been elected, had refused to act.

[7] The issue was made by the pleadings of the parties as to whether the said Simpson had refused to accept the office after his election. The evidence offered on the trial of the case was in substance as follows: Simpson himself made affidavit that about the time of the holding of the primary election he was appointed acting postmaster of the United States post office at Olton, in Lamb county, and had duly qualified and had applied to be postmaster of said office; that, immediately after the primary election, he told L. S. Kennedy that he had learned that the postal laws prohibited him from holding the office of county chairman and that he could not act as chairman; that he was not willing to accept the office and had never accepted the same. The said L. S. Kennedy made affidavit to practically the same facts. Seaton testified that he was present at the attempted hearing of the contest on the 13th day of August, and heard Mr. Simpson testify before the committee at such time; that the said Simpson stated in his testimony that he had not acted and could not act as county chairman, but was called back the second time and stated that he was willing to serve and ready to serve. Later the witness Seaton testified that the said Simpson did not serve that day, but refused to serve because he was postmaster, and the said witness Seaton then stated that this refusal was after one of the attorneys had talked to him and after he came back on the stand. The witness, Brazeal, who was serving as one of the executive committeemen at the hearing, testified that Simpson appeared before the committee and testified that when he was first put on the stand, he stated that he had been elected with the expectation of filling the office, but he was not serving on that day because Mr. Kennedy knew more about the requirements of the office and "he would let him serve until after the contest. He said that he was willing to serve"; that, on Mr. Simpson's second appearance before the committee, he stated that he had told Mr. Kennedy that he would not serve on account of the prohibition of the postal regulations, and that he was not then willing to serve until he found out whether he would be appointed to the position of postmaster at Olton.

[8] It thus appears that the great preponderance of the evidence is to the effect that Simpson refused to accept the office and in the face of this testimony and of Simpson's own declaration that he had been unwilling to accept, and had not accepted the office, we do not think we should impute to the court a finding that the said Simpson had accepted such office. We say this, especially in view of the fact that it is evident that the court's decision was based on some other theory of the case, for the injunction is against Eby and Cleavenger as well as Kennedy, so that the court evidently placed the decision on some theory that would apply to all of the defendants.

[9] It appears that R. P. Stripe was, at the 1920 primaries, elected committeeman from precinct No. 3; that he was present at the hearing of the contest, which was later stopped by the temporary injunction, and was invited to sit, but refused to do so, because he had not been given notice of the hearing; that after the issuance of the injunction the

said Stripe called on Simpson, who still refused to serve as county chairman, whereupon the said Stripe, acting alone without calling on Kennedy, Eby, or Cleavenger, appointed the said Maxey, Crawford, Cooper, and Andrews, referred to in plaintiff's supplemental petition, as committeemen of the various precincts of Lamb county, to act with himself; and that such committee elected Mr. Seaton as county chairman. These facts were offered in support of plaintiff's supplemental petition that there had been, after the issuance of the injunction, an executive committee duly appointed, etc. Article 3107, which we have already quoted, provides that—

"In case of a vacancy occurring in the office of chairman, county or precinct, or any member of such committee, such vacancy shall be filled by a majority vote of said executive committee."

This law contemplated an act of the executive committee as a body, and, in the absence of some provision of law to the contrary, it would take a majority of the members of such body to constitute a quorum. Heiskell v. City of Baltimore, 65 Md. 125, 4 Atl. 119, 57 Am. Rep. 308; Gumaer v. Cripple Creek Tunnel & Transportation Co., 40 Colo. 1, 90 Pac. 84, 85, 122 Am. St. Rep. 1024, 13 Ann. Cas. 781; Foster v. Mullanphy Planing-Mill Co., 92 Mo. 79, 4 S. W. 260. We do not think the evidence shows that this executive committee was appointed as provided by law.

We think the court erred in overruling the motion to dissolve the injunction, and ·judgment will be here entered sustaining said motion.

### On Motion for Rehearing.

[10] Since the general election has been held pending the filing of this motion, any final judgment we might render in the case would be futile. The case will be dismissed. McWhorter v. Northcutt, 94 Tex. 86, 58 S. W. 721. For other authorities, see Michie's Digest, vol. 1, pp. 365, 366. Each party should pay the costs incurred by him. R. S. art. 2030; C. J. vol. 15, pp. 73, 74, and 96.