## SARTIN v. HUDSON et al.

### No. 14210.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 1, 1940.

C. C. McDonald, of Wichita Falls, for appellant.

John Davenport and J. R. Wilson, both of Wichita Falls, for appellees.

SPEER, Justice.

This suit was instituted by B. D. Sartin, hereinafter referred to as relator, against C. C. Hudson, as chairman of the Democratic Executive Committee of Wichita County, Julian McFall, county clerk of that county, and Guy McNeely, to whom we shall refer as respondents, for certain injunctive relief and for a writ of mandamus.

Because of the conclusions we have reached in the disposition of this appeal, we shall state fully the allegations of relator.

It is alleged that he was a candidate for the office of County Judge of Wichita County, at the July 24, 1940, primary, and was opposed by Guy McNeely, J. Ralph Schoolfield and Bruce Greenwood; that said primary was duly and legally held on said date, and that relator received 4,807 votes, McNeely 4,276, Greenwood 2,570 and Schoolfield 1,657 votes; that there was no decision reached by the Democratic Executive Committee of Wichita County requiring a majority vote for the nomination in said primary election of July 27, 1940, for county officers; that relator having received a plurality of the votes cast at said primary, he became the duly elected Democratic nominee for the office of County Judge of said county, and is entitled to be certified as such nominee by

the chairman of the Democratic Executive Committee, and to have his name duly and regularly printed on the official ballot in the general election of November, 1940, by the county clerk of said county.

It is further alleged that respondent C. C. Hudson, without legal right or authority and without the sanction or approval of a majority of said Democratic Executive Committee, after canvass of the votes cast at the July primary, as above mentioned, had the names of relator and Guy McNeely printed on a run-off ballot for August 24, 1940, "and that after such so called election, the votes again were canvassed by said chairman and by three members of the said Democratic Committee and the said Guy McNeely was declared the nominee at said primary and is being unlawfully certified as such legal nominee to the county clerk of such county, and the county clerk will so post and print his name as required by law upon the official ballot, unless this Honorable Court restrains such unlawful procedure on the part of these respondents." It was alleged that all said acts of Hudson, chairman of the said committee, were wholly void and without lawful authority; that the act of canvassing the returns of the second primary by the chairman and three members of the committee, which is composed of 46 members, was unlawful and void, for the reason there was no quorum present for the dispatch of business of any kind; that the chairman had no legal right to certify the name of McNeely as the nominee for county judge, and that all acts of the chairman or the minority members of the committee in attempting to hold said second primary in the race for county judge, or in canvassing the results of said second primary in said race, were illegal and void; that there is no authority of law to hold such second primary for county officers without a decision made and entered by a majority vote of said Executive Committee before the first primary and before the canvass of the votes cast thereat and that a canvass of such votes must be by a majority of said committee. "That no such decision (to require a majority vote for nomination) was ever reached by such committee before said first primary or after such primary wherein a quorum of such committee was present." That by reason of the facts alleged, relator is the duly elected nominee of the party for the office of county judge, and is entitled to have his name certified as such by the chairman of the Democratic

Executive Committee, to the county clerk of said county. That he has made demand upon the chairman to so certify his name and his request has been refused; that relator has no complete or effectual remedy at law and will suffer irreparable damage unless the court shall grant its writ of mandamus directing said officials to so certify his name as such nominee and to post and print it on the official ballot. Prayer was for the relief last mentioned and for costs of suit.

McFall, the clerk, made no appearance. Respondents Hudson and McNeely filed pleas in abatement, because all members of the Democratic Executive Committee were not made parties; being overruled, they filed general demurrer and several special exceptions, which were likewise overruled, to which ruling exceptions were taken. Subject to these, they filed answers to the merits. We shall have occasion to mention these special pleas later.

A jury trial was had. Two special issues were submitted. The verdict was, in effect, that (1) at a meeting of the Democratic Executive Committee, held on June 17, 1940, not as many as 24 members were present; and (2) a majority of those present at that meeting reached the conclusion that nominations for county and precinct officers should be by a majority vote. Upon this verdict the court entered judgment denying relator the relief prayed for. Motion for new trial was overruled and appeal perfected.

■ It is not out of place to state just here that the pleas in abatement, based upon the contention that all members of the Executive Committee should have been made parties to the suit, were properly overruled. No relief is sought against any member of the committee except the chairman, who is by law an ex-officio member. The chairman alone certifies the name of the nominee and he is the only member of the committee against whom relief is sought. Article 3125, R.C.S., Vernon's Ann.Civ.St. art. 3125.

Relator presents this appeal on assignments of error which raise questions substantially as contended for by him in the trial court. The substance of his assignments is: (1) The Democratic Executive Committee did not at any time prior to the first primary decide to require nominations of county officers to be by a majority vote, and therefore, under the statute Article 3106, nominations were to be made by a plurality vote; (2) at the meeting of the Executive Committee on June 17, 1940, less than a majority of the 46 members were present, and there being less than a quorum present, no business of the Committee could be lawfully transacted.

■ In the view we take of this case, it becomes unnecessary for us to discuss the points raised by relator's assignments of error. We think the trial court should have sustained respondents' general demurrer to the petition. The ruling of the court, when the general demurrer was presented, is complained of by respondents and brought forward alternatively, by cross assignments of error. Whether such cross assignments are necessary or not in such cases as this, they certainly have not been waived by repondents, even if they could do so; we seriously doubt if respondents could waive any necessary element of relator's right to the writ.

■ The writ of mandamus is an extraordinary remedy. At all times since the days of statehood our Constitution and laws have recognized the necessity for the remedy it affords; our earliest Constitution and each subsequent revision, together with our statutory laws, have recognized it; the Constitution and laws of this State were patterned, in the main, from the laws of England.

■ In the early case of Arberry v. Beavers, 6 Tex. 457, 55 Am.Dec. 791, it was held that to entitle a party to have applied the remedy afforded by mandamus, he must show a clear legal right in himself and a corresponding obligation on the part of the officer against whom he seeks the writ. To the same effect is the holding of our Supreme Court in Bledsoe v. International Ry. Co., 40 Tex. 537, 564 et seq. The principles there announced have been uniformly followed by our courts. In the last 'cited case a general demurrer to relator's petition was involved, and even though the case was tried below on its merits, the Supreme Court determined relator's rights by testing his petition as against the general demurrer urged in the trial court. That rule was followed in Watkins v. Huff, Tex. Civ.App., 63 S.W. 922, writ dismissed 94 Tex. 631, 64 S.W. 682.

In Houston Tap & B. Ry. Co. v. Randolph, Treasurer, 24 Tex. 317, 329, a demurrer was sustained to relator's petition for writ of mandamus and the court, speaking through Judge Roberts, said: "It is

well settled, that to entitle a party to the extraordinary remedy of mandamus, the petition must state facts, which show, if true, that the plaintiff has a clear right to the performance of the thing demanded, and that it is plainly the duty of the officer proceeded against, to perform such thing."

On page 333 of 24 Tex., this rule is announced: "The circumstances under which the applicant claims the right, should be positively and distinctly stated, and objections which might be anticipated should be met and answered."

On appeal from an order denying a writ of mandamus, in Johnson v. Elliott, Tex. Civ.App., 168 S.W. 968, at page 972, error refused, this was said:

"There is still another reason which we think justified the court below in dismissing the application for this writ of mandamus. Such writs are extraordinary remedies, and, when invoked for the purpose of compelling the performance of some official duty enjoined by law, it must clearly appear from the petition that the applicant is entitled to the service which he seeks to have performed. [Houston Tap & B.] Ry. Co. v. Randolph, 24 Tex. [317] 333; Watkins v. Huff [Tex.Civ.App.], 63 S.W. 922, and cases there cited. The petition, in order to be free from objection, should not only aver every fact essential to show the right to the service sought, but should also negative every other fact which the officer might urge as a legal excuse for not performing the service demanded. In granting a writ against a public official, seeking to compel the performance of a public duty about which the officer may have no personal concern, the court must be fully advised on the subject.

"The propriety of issuing the writ is therefore not to be determined by the defense which the official may interpose, but by the allegation and proof of facts which show affirmatively and clearly that under the particular circumstances he is legally bound to perform the service. The duties of the court would be none the less imperative if the officer failed to set up any defense whatever. It is not a matter which he can waive."

The same strict rule of pleading as that above announced has been applied in injunction cases. In Walker et al. v. Hopping, Tex.Civ.App., 226 S.W. 146, 149, this was said: "A petition for injunction should 'negative every reasonable infer-ence arising from the facts so stated, from which it might be deduced that (the plaintiff) might not, under other supposable facts connected with the subject, thus be entitled to relief.' Gillis v. Rosenheimer, 64 Tex. 243."

Supporting the rule, see Ridgway v. City of Fort Worth, Tex.Civ.App., 243 S.W. 740, writ dismissed; Bevers et al. v. Winfrey et al., Tex.Civ.App., 260 S.W. 627; McIntosh, Judge, v. Watts, Tex.Civ.App., 5 S.W.2d 1003; Fry v. McDuffey, Tex. Civ.App., 46 S.W.2d 377; City of El Paso v. Carroll, Tex.Civ.App., 108 S.W.2d 251, writ refused; and Paschall et al. v. Renshaw et al., Tex.Civ.App., 142 S.W.2d 717.

 Relator knew when he filed his petition all the facts testified to by him upon the trial. He knew that he was present at the meeting of the Committee on June 17th prior to the first primary. He testified that no reference was made at that meeting to whether or not a majority vote would be required to nominate. There is ample evidence to support the jury finding that the Committee members present did so decide. Although there were less than a majority of the 46 members present, they did, as required by Article 3117, determine by lot the order in which names of various candidates would appear on the ballot, and as provided by Article 3108, Vernon's Ann. Civ.St. Art. 3108, made assessments against all county and precinct candidates to defray the expenses of the two primaries required by law for state and district offices. Relator obviously acquiesced in these matters, otherwise his name would not have appeared on the ballot at the first primary. Art. 3116, R.C.S., Vernon's Ann.Civ.St. art. 3116. He also knew that after the returns of the first primary were canvassed, there was no declaration of a nomination for county judge made, and that his name had not been certified to the county clerk as such nominee. His petition discloses that the chairman and Committee had relator's and McNeely's names printed "on the run-off ballot for August 24th, 1940." He also knew at the time he filed his petition that he entered into and made a vigorous campaign to secure votes, with the hope of obtaining a majority of the votes cast in the second primary; we say this because he so testified upon the trial. This further significant fact was revealed by relator's testimony: His counsel having related certain recitations in re-

spondents' answer, asked this question: "When was the first time you ever learned that the County Democratic Executive Committee of 1940 had made any provision for the nomination of county and precinct officers in the Democratic primary by a majority vote?" His answer was: "I judge three or four days after the second primary." This question and answer indicate that the Executive Committee had in fact decided to require a majority vote to nominate county and precinct officers. The question and answer may have been referable to the fact that it was being contended at the time of the trial that the committee had in fact so decided. In passing upon the sufficiency of relator's petition as against a general demurrer, testimony given at a hearing after the demurrer had been overruled would only be pertinent to reflect the knowledge of relator at the time of filing his petition, and our reference to it is only for that purpose. All of these facts tend to support the theory of estoppel as against relator to recover the relief sought by him. The petition contained no allegations negativing facts which would defeat or overcome the matters detailed. Under the authorities above cited, these things should have been anticipated and answered by the pleadings in the petition. He did not attempt to avoid being bound by the acts of the committee at its June 17th meeting, wherein the order in which names of candidates should appear on the ticket and the amount to be paid as his proportionate part of the expenses to be incurred was made, but only attacks its orders and decisions in one instance, i.e. because it did not then or at any other time before the first primary, with a quorum present, decide to require a majority vote to nominate. If his contention is sound that he was the real nominee of the party for the office of county judge, because he had received a plurality of the votes cast at the first primary, his remedy would have been to require the chairman to certify his name as such. He could not acquiesce in the acts of the committee and its chairman and speculate upon the results of a second primary, and after being defeated at the last election, repudiate the act of that primary and rely upon the result of the first. Relator stated in argument when this case was submitted, that he did not know, when he participated in the second primary, that the Committee had not decided to require a majority vote to nominate, and he testified upon the trial to the

same effect; again this was all subsequent to the time he acquired knowledge of what is stated in the petition.

To assume, for sake of argument, that the acts of a minority of the Executive Committee in deciding at its June 17th meeting that nominations for county offices in Wichita County should be by a majority vote, was void, yet that body was a de jure one attempting to act for the committee as a whole; relator was evidently present at the meeting and must have known of its actions and that no quorum was present. His subsequent acts obviously indicated an acquiescence in the requirements of the group which attempted to act for the whole committee; he complied with the decisions of that minority body in permitting his name to be placed on the ticket of the first primary in the order prescribed, paid the amount required for defraying election expenses and subsequently permitted his name, with that of McNeely, to go on the ticket for a second primary election. A valuable property right was involved in all this procedure. This right inured to relator, McNeely and to the public at large in the county. There is nothing in the record to indicate that McNeely was at fault in any particular. Pursuant to relator's acts, McNeely was caused to engage in what we may assume was a strenuous effort to obtain votes in the second primary, similar in all respects to the efforts of relator. McNeely's property rights were involved to the same extent as were those of relator. It cannot be supposed that McNeely would have engaged in the second contest if it had not been on account of relator's acts in acquiescing in the decision of the minority group of the Executive Committee to require a majority vote to nominate. For these reasons McNeely was caused to work to his own hurt solely on account of the acts of relator, and presents one essential element of estoppel.

The valuable property right of relator in having awarded to him the nomination is subordinate to the rights of the public at large in the county. The electorate has even a greater right involved in the selection of county officials than any one who seeks the office. There can be no ground for balancing injuries sustained on the one hand by an individual and upon the other by the public. In presenting this thought, we do not have in mind a comparison of the fitness of either of the candidates for the office of

county judge, but simply the idea of a comparison of the property rights of each of the candidates to that of the electorate to determine who shall fill its offices of trust, like that of county judge. See Ford v. State, Tex.Civ.App., 209 S.W. 490, and Mayhew v. Power, Judge, Tex.Civ. App., 104 S.W.2d 642.

■ We entertain no doubt that relator could waive the right to have the Executive Committee's decision to require that nominations be by a majority vote, and that by his acts could estop himself to contend that it had not done so. In Ruling Case Law, Vol. 27, page 906, this is said: "The doctrine of waiver, from its nature, is applicable generally speaking, to all rights or privileges to which a person is legally entitled, whether secured by contract, conferred by statute, or guaranteed by the constitution, provided such rights or privileges rest in the individual, and are intended for his sole benefit. A right or privilege given by statute may be waived ,or surrendered, in whole or in part, by the party to whom or for whose benefit it is given * * *."

One of the special answers of respondents, filed, of course, before trial was had, contained this allegation: "The said Sartin (relator) is in all things estopped to question any irregularities, if any, for the reason of the manner in which he has participated in the elections, and by reason of the fact that he knew the existence of the rule adopted by the Democratic Executive Committee, and by reason of the fact that he knew that the Democratic Executive Committee of Wichita County, Texas, in 1940, had decided and planned for the holding of such number of elections as were necessary to elect the county and precinct officers by a majority vote, and having participated therein in the manner as herein alleged, is now estopped from asserting any invalidity or irregularity of the manner in which the elections were conducted."

■ Even if it could be said that relator could not anticipate that his conduct would estop him from now claiming that he was nominated in the first primary, an assumption to which we do not accede, when the above answer was filed, it became encumbent upon him to plead facts which would relieve him of the results of his acts in the premises. It is evident that if relator's conduct would estop him from

obtaining the relief sought by the writ, he was aware of all those facts and circumstances entering into the defense of estoppel when he instituted the suit, and was again reminded thereof when respondents filed their answer. Relator did not attempt to negative any of the elements of estoppel, either in his petition, by amendment, or by supplemental pleading. If he did not have actual knowledge of all the facts necessary to work an estoppel against him, it was necessary for him to plead a state of facts which would relieve him of the effects of his acts because of a lack of constructive knowledge.

Article 3106, R.C.S., reads: "The county executive committee shall decide whether the nomination of county officers shall be by majority or plurality vote, and, if by a majority vote, the committee shall call as many elections as may be necessary to make such nomination, and in case the committee fails to so decide, then the nomination of all such officers shall be by a plurality of the votes cast at such election."

■ It will be observed that the statute does not provide just when the committee shall make its decision on the subject, but it stands to reason that it must be at a time prior to the date on which the results of the first primary are canvassed and declared. It has been held that the provisions of the above quoted article of the statute are mandatory. Cliett v. Williams, Tex.Civ.App., 97 S.W.2d 272; Anderson v. Aldrich, Tex.Civ.App., 120 S.W.2d 605. But in neither of those cases was the sufficiency of the pleadings for the writ of mandamus discussed, nor does either announce a contrary doctrine to that which we believe to be controlling in the instant case.

This appeal was filed in this court on September 17th, a motion to advance filed on the next day. We were taking submissions of cases at Texarkana, under orders of the Supreme Court, on both those dates, and returned on the night of September 20, 1940. On September 21st, we granted the motion to advance and set the 25th as the earliest possible date for submission. Because of the importance of the question involved and the shortness of time before the general election ticket must be printed, we have considered the appeal in advance of all other cases previously submitted. We are announcing our opinion at a special called opinion day prior

824

to the date on which opinions of the court are regularly announced.

We have reached the deliberate conclusion that the petition of relator did not state a cause of action entitling him to the issuance of the writs of mandamus and injunction as prayed for. That the general demurrer should have been sustained and, if requested, a leave to amend, granted. The trial court denied the relief sought, not because of the insufficiency of the pleadings, but upon the jury verdict. For reasons indicated, we cannot approve the action of the trial court in denying the writ upon the grounds stated, but must reverse and remand the cause for further proceedings in conformity with the views herein expressed. Reversed and remanded.