## WILLIAMS et al. v. HAMMOND.
(No. 11525.)

(Court of Civil Appeals of Texas. Fort Worth. Nov. 14, 1925.)

Schools and school districts ⚙️38—At election involving consolidation of common school districts, presiding judge need not affix signature to ballots.

Rev. St. 1925, art. 3008, requiring judge to affix signature to ballots, *held* inapplicable to election involving consolidation of common school districts, being a special election under article 2806, and ballots might be counted notwithstanding articles 2923 and 3018.

Appeal from District Court, Clay County; Vincent Stine, Judge.

Election contest between J. P. Williams and others and Roy Hammond. Judgment for latter, and former appeal. Reversed and rendered.

W. G. Eustis, of Henrietta, and J. P. Williams, of Wichita Falls, for appellants.

Wantland & Glasgow, of Henrietta, for appellee.

BUCK, J. This is an appeal from a judgment of the district court of Clay county, in a contest over an election involving the consolidation of three common school districts. The only question involved is whether in such election it is necessary for the presiding judge of the election to affix his signature to the ballots used before they are voted. The trial court held that it was necessary, and declared the election a nullity.

Article 3008, 1925 Rev. Civil Stats., [3001] Terrell Election Law, provides that the judge of the election shall write his signature on the blank side of each ballot noted, and article 3018 [3011–12], provides that in elections in which this law applies all ballots not so marked shall not be counted. Article 2923 [3081] [1810] [1759] provides:

"The provisions of this title [Elections] shall apply to all elections held in this state, except as otherwise provided herein."

Article 2817¼, Rev. Civ. St., 1922 Supp., as amended by Acts 38th Leg., 3d Called Sess., 1923, c. 13 [article 2806, Rev. Civ. St. 1925], provides:

"On the petition of twenty or a majority of the legally qualified voters of each of several contiguous common school districts praying for the consolidation of such districts for school purposes, the county judge shall issue an order for an election to be held on the same day in each such district. The county judge shall have notice of the date of such elections by publication of the order in some newspaper published in the county for twenty days prior to the date on which such elections are ordered, or by posting a notice of such elections in each of the districts, or by both such publication and posted notices. The commissioners court shall at its next meeting canvass the returns of such elections, and if the votes cast in each and all districts show a majority in favor of such consolidation, the court shall declare such common school districts consolidated.

"Common school districts may in like manner be consolidated with contiguous independent school districts, and the district so created shall be known by the name of the independent school district included therein, and the management of the new district shall be under the existing board of trustees of the independent district, and all the rights and privileges granted to independent districts by the laws of this State shall be given to the consolidated independent districts created under the provisions of this law.

"The term 'district' as used in this and the succeeding nine articles means 'consolidated common school districts,' or 'consolidated independent school district.' "

In Hillert v. Schweppe (Tex. Civ. App.) 234 S. W. 152, it is held that in an election under Rev. Statutes (1911) arts. 2827–2836, it is not essential to the validity of the election that the presiding officer affix his signature on the reverse side of the ballots, and that this election being specially provided for under the statutes, it is not subject to

---

⚙️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the general election law. See, also, Clark v. Willrich (Tex. Civ. App.) 146 S. W. 947. In Wallis v. Williams, 101 Tex. 395, 108 S. W. 153, Chief Justice Gaines, speaking for the Supreme Court, on certified questions, held that the provision of the Terrell Election Law did not control in an election to determine the location of the county seat of Chambers county. The court said:

"We see no good reason for excluding elections under special laws technically so called from the operation of the act and including other special elections. Elections under special laws strictly so called are of infrequent occurrence, and, as a rule, are subject to precisely the same conditions as an election for the removal of a county seat, for a stock law, and the like. There is usually in all such merely a proposition to be voted upon, and the question is: Shall it be adopted or not? This makes a broad line of distinction between general elections for the choosing of officers to conduct the government in which numerous candidates are to be voted for and elections specially provided for, in which the people express their will upon a single proposition. It would seem a wise policy to except the latter from the provisions of a law regulating the former, and to leave the latter unembarrassed by the restrictions thrown around the former. Many of the regulations as to the preparing the ballot are inapplicable to a special election, and cannot be literally complied with.

"Subdivision 6 of article 3268 of our Revised Statutes of 1895 expressly provides that: 'In all interpretations the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil, and the remedy.' We think the Legislature did not intend to make the Terrell Election Law applicable to special elections. There has never been, so far as we are aware of, any complaint in reference to the operation of laws affecting such elections. The evil was in the laws affecting the general election, and it was the purpose to remedy them only.

"There are some provisions in the Terrell law which apply to special elections of the character of that in controversy, from which it may plausibly be argued that it was not the intention to except them from its provisions. But section 194 was added by amendment in the Senate after the bill had passed the House. The final passage in both houses was upon the last days of the session. It was hardly to be expected that in a bill of such complication consisting of 195 sections, * * * they would look back to eliminate every incongruity in the bill after incorporating the exceptions provided for in section 194."

See, also, Walker v. Mobley, 101 Tex. 28, 103 S. W. 490, by the Supreme Court.

It is urged that since the statutes do not prescribe the form of the ballot, nor the manner of holding the election to determine the consolidation of school districts, the general election law should apply. In the election involved in Wallis v. Williams, the form of the ballot is prescribed. Article 1392, Rev. Civ. Stats. 1914. But undoubtedly the election in the instant case was an election under a special law, or special election, and under the cited case the general election law does not apply, for the act providing for this election was one "which applies to an individual or individuals, or to some individuals of a class." Wallis v. Williams, supra; 36 Cyc. p. 986, under note 71.

We conclude that the trial court erred in holding the election void, because of claimed illegal ballots being cast, and inasmuch as it appears that if such ballots, not attested by the signature of the presiding judge, were legal ballots, the election for consolidation passed, the judgment below is reversed and judgment here rendered for appellants, sustaining the consolidation. All costs will be adjudged against appellees.

Reversed and rendered.