S. B. WALKER ET AL. v. J. A. MOBLEY.

No. 1730. Decided June 26, 1907.

**1.—Election Law—Local Option.**

The general election law does not apply to elections under the Local Option Law for prohibiting sale of intoxicating liquors so far as they are in conflict, and to that extent the latter law governs such elections, (Act of May 1905, Terrell Election Law, Secs., 93, 194; Rev. Stats., art. 3389, Laws, 28th Leg. pp. 541, 564.)   (Pp. 31, 32.)

**2.—Same—Signing Ballot.**

The presiding judge in an election on prohibition of sales of intoxicating liquors is not required to sign his name on the ballots used by the voters, (Act of May, 1905, Terrell Election Law, secs. 46, 72, 78, Laws 29th Leg. pp. 531, 537, 538, Rev. Stats., art. 3388.)   (P. 32.)

**3.—Election Officer—Disqualification.**

The chairman of a party executive committee is not the holder of an office of profit or trust under State, city or town, and is not prohibited, as such, from serving as an officer of election. (Terrell Election Law, sec. 60; Laws 29th Leg. p. 535.)   (P. 32.)

Questions certified by the Court of Civil Appeals for the Fifth District, in an appeal from Henderson County.

*W. W. Ballew,* for appellant.—No one who holds an office of trust under the United States, or Texas, or in any city or town in this State, except a notary public, shall act as judge, clerk, or supervisor of any election.   Terrell Elec. Laws, sec. 60.

The counting judges and clerks shall count no ballots that do not bear the signature of the presiding judge.   Sec. 78, Terrell Election Law, Act of 1905; Arnold v. Anderson, 93 S. W., 695; Clark v. Hardison, 90 S. W. Rep., 343; Rhodes v. Driver, 64 S. W. Rep., 273; Kirkpatrick v. Board of Canvassers, 44 S. E. Rep., 465; Slaymaker v. Phillips, 47 L. R. A., 842; Brigance v. Horlock, 97 S. W. Rep., 1060; Kelley v. Adams, 183 Ill., 193, 55 N. E. Rep., 837; Orr v. Bailey, 59 Neb., 128; McCrary on Elections, 226; Parvin v. Wimberg, 130 Ind., 561, 15 L. R. A., 775; West v. Ross, 53 Mo., 350; Ledbetter v. Hall, 62 Mo., 422.

Under the Terrell Election Law of 1905, sec. 72 and 78, the presiding judge of the election has no authority to empower others to sign his name for him.. The authority delegated by the statute is special and can not be redelegated, nor can the presiding judge ratify the acts of another judge, who signs his name for him.   Chenowith v. State, 96 S. W. Rep., 19, and authorities therein cited; Arnold v. Anderson, 93 S. W. Rep., 697; Rhodes v. Driver, 64 S. W. Rep., 273; Kirkpatrick v. Board of Canvassers (W. Va.), 44 S. E. Rep., 465; Kelley v. Adams, 183 Ill., 193; Orr v. Bailey, 59 Neb., 128.

*Watkins & Jones, Paul Jones, Tom P. Faulk* and *Faulk & Faulk,* for appellee.—By the proviso of section 194 of the Terrell Election Law the local option law was not repealed or in any way affected. Terrell Election Law, sec. 194, 51-54, 46 to 51; Rev. Stats., 3388;

Ex parte Anderson, not reported; Ex parte Keith, 83 S. W., 683
Ex parte Hannah, 87 S. W., 702; Hash v. Ely, 18 Texas Ct. Rep.,
262; Norman v. Thompson, 72 S. W., 62; Rev. Stats., 3390 and 1747;
Burrell v. State, 65 S. W., 914; Chapman v. State, 39 S. W., 113.

Under section 72, of said Terrell Election Law "an official ballot
on the blank side of which the presiding judge shall have previously
written his signature" means a ballot on which the signature of said
judge is placed by either his own hand, or by some one else in his
presence and under his direction and instruction, and such "signa-
ture" does not mean his autograph, or personal handwriting.   Terrell
Election Law, secs. 78, 74, 72; Hanson v. Rowe, 26 N. H., 327;
Achorn v. Matthews, 38 Me., 173; Hotchkiss v. Cutting, 14 Minn.,
537; Ellis v. Francis, 9 Ga., 327; People v. Smith, 20 Johns.. 63;
Gardner v. Gardner, 5 Cush., 483; Fitzpatrick v. Enager, 175 Pa.,
393; Devlin, Deeds, sec. 232-233; In re Walker, 110 Cal., 393;
Zacharie v. Franklin, 12 Peters, 151; Church v. Campbell, 48 La. Ann.,
1546; Watson v. Pipes, 32 Miss., 451; First Nat. Bank v. Glenn,
77 Pac. Rep., 623; Southerland on Statutory Const., 454; Snodgrass
v. Wetzel Co., 29 S. E. Rep., 1035; Kenworthy v. Mast, 74 Pac.
Rep., 841.

We respectfully submit, that since the qualified voters of the dis-
trict have honestly voted the tickets handed them and thereby regis-
tered a full and fair expression of their will, that under both the law
governing local option elections, as well as the general election law
the same should have counted.   Const., Texas, art. 16, sec. 20;
Kulp v. Railey, 13 Texas Ct. Rep., 1009; Davis v. State, 75 Texas,
424; Lipscomb v. Perry, 15 Texas Ct. Rep., 751; Buchanan v.
Graham, 81 S. W. Rep., 1237; Hoper v. Flentge, 41 S. W. Rep., 1008;
Fowler v. State, 68 Texas, 34; State v. Phillips, 63 Texas, 393;
People v. Wood, 42 N. E. Rep., 536; Stackpole v. Hallahan, 16
Mont., 40.

MR. JUSTICE BROWN delivered the opinion of the court.

Certified questions from the Court of Civil Appeals for the
Fifth Supreme Judicial District.   The statement and questions are
as follows:

"On the 20th day of September, 1906, appellants filed their suit
in the District Court of Henderson County, Texas, against J. A.
Mobley, County Attorney, to contest an election that had been held
on the 1st day of September, 1906, in Justice Precinct No. 1, Hen-
derson County, Texas, to determine whether or not the sale of intoxi-
cating liquors should be prohibited in said Justice's Precinct.   The
case was tried upon an agreed statement of facts and judgment ren-
dered sustaining the election, to which judgment plaintiffs excepted
and perfected an appeal.   The facts are as follows:

"An election was held in Justice Precinct No. One in Henderson
County, Texas, on September 1, 1906, to determine whether or not
the sale of intoxicating liquors should be prohibited in said Justice
Precinct No. One, Henderson County, Texas.   Said election resulted
in favor of prohibition by a majority of 17 votes.   There are two
voting precincts in said Justice Precinct No. One, known as voting

precinct No. 1 and voting precinct No. 2. Voting precinct No. 1 gave a majority of 19 against prohibition and voting precinct No. 2 gave a majority of 36 votes in favor of prohibition. The result of the election was duly and legally declared by the Commissioners Court in favor of prohibition by a majority of 17, and due publication made of the result as required by law. J. T. Dean was chairman of the Democratic Executive Committee of Henderson County at the time of holding said election and was the presiding judge of voting box No. 2. 484 ballots were cast in said election at said voting box No. 2. The tickets had printed upon them "for prohibition" and "against prohibition." J. T. Dean, the presiding judge at said voting box No. 2, did not personally sign any of said ballots so cast at such box. But he directed another judge of the election, to wit, Steve Miller to sign his, the said Dean's name, upon the back of said ballots, and personally directed him as to the manner in which he signed and spelled his name, and called the attention of the other officers and clerks of the election to the fact that he was having the said Miller sign his name for him, and requested that they familiarize themselves with said signature as his signature, and that the said Steve Miller so signed the name of the said Dean upon all of said ballots, and that no ballots were handed out to voters except as were so signed, and that no ballots were handed back and voted except such as were so signed. The ballots were all so signed, under the personal direction, oversight and inspection and in the immediate presence of the said J. T. Dean.

"On a former day of the present term of this court we reversed and remanded the case and held the election void on the ground that the failure of the presiding judge of voting precinct No. 2 to sign his name on the blank side of ballots made the ballots illegal and that the same should not have been counted. Mr. Rainey, C. J. dissented from the opinion of the majority of the court, for the reason that in his opinion the facts showed a substantial compliance with these requirements of the statute, and that a substantial compliance was sufficient.

"The cause is now pending before us on motion for rehearing and inasmuch as the opinion of this court is final, and in view of the dissent and importance of the question, we deem it proper that the case be certified to your Honorable Court for its opinion on the following questions:

"Question 1. Does the general election law, known as the Terrell election law, (see Sayles' Sup. Civ. Stats., 1906) apply to a local election held under the provisions of Articles 3384 to 3399, inclusive, of Revised Statutes of 1895?

"Question 2. Are the provisions of Section 72 of said election law, that the election judges shall deliver to the voter "an official ballot on the blank side of which the presiding judge shall have previously written his signature," and of Section 78 which stipulates that the counting judges and clerks "shall count no ballots that do not bear his signature" mandatory, and should ballots which do not bear his signature signed by him in person be counted?

"Question 3. Should the ballots on the blank side of which the

name of the presiding judge of voting precinct No. 2 was written by another under the circumstances shown in the above statement, have been counted?

"Question 4. Is a substantial compliance with the requirements of Sections 72 and 78, as above set out, sufficient to entitle the ballots to be counted?

"Question 5. Was J. T. Dean disqualified from acting as presiding judge of voting precinct No. 2 in said election by reason of his being at the time the Chairman of the Democratic Executive Committee of Henderson County?"

For convenience, the Terrell Election Law will be referred to in this opinion as "the election law." Section 93 of that law is in these words: "The provisions of this act shall apply to all elections held in this State, except as otherwise herein provided." Section 194 of the same act provides: "This act is cumulative as to elections and penalties for violating the election laws of this State; except that it shall repeal the election act approved by the Governor April 1, 1903; provided, that this act shall not interfere with or repeal any local option or special laws of this State, except as herein specially provided and set forth." Article 3389 of the Revised Statutes provides: "The officers holding said election shall, in all respects not herein specified, conform to the existing laws regulating elections; and after the polls are closed shall proceed to count the votes, and within ten days thereafter make due report of said election to the aforesaid court." Considering these sections together we deduce the conclusion that the election law does not apply to local option elections as to matters in which there is a conflict, and that so far as a conflict exists the local option statute will prevail and its provisions be applied to the conduct and management of local option elections.

The election law provides for an official ballot which is to be made up and furnished by the county officers in elections to which it is applicable. Section 46 of that law prescribes: "No ballot shall be used in voting at any general election, primary or special election held to elect public officers, select candidates for office, or determine questions submitted to a vote of the people, except the official ballot, unless otherwise authorized by law." The section then prescribes the form of the ballot and what shall be printed thereon. Without entering into detail, we will state generally that the law provides that in all elections to which it is applicable "the county judge, county clerk and sheriff shall constitute a board, a majority of whom may act, to provide the supplies necessary to hold and conduct the election, all of which shall be delivered to the presiding judges of the election by the sheriff, or any constable of the county when not called for and obtained in person by the precinct judges." In elections to which the official ballot applies the presiding judge has possession of all ballots and is required to place his signature upon each ballot before it is handed out to the voter. No voter can procure a ballot except from the presiding judge. And Section 72 of the said act prescribes that the voter, having received the ballot from the presiding judge and having prepared it, shall present it to the judges who will

receive, number and deposit it in the proper box. Section 78 is in this language: "The counting judges and clerks shall familiarize themselves with the signature of the judge who writes his name on each ballot that is voted and shall count no ballots that do not bear his signature, or are unnumbered, or if on examination by the judges, such signature is found to be a forgery." It will be seen that Sections 72 and 78 of the election law concern only official ballots. The first four questions submitted to us will be answered by our conclusion as to whether the law requires the voter to use the official ballot at local option elections.

Article 3388, Revised Statutes, prescribes the form of the ballot to be used at local option elections as follows: "At said election those who favor the prohibition of the sale of intoxicating liquors within the proposed limits shall have written or printed on their tickets the words "For prohibition," and those who oppose it shall have printed or written on their tickets the words, "Against prohibition."

Under this article the voter furnishes his own ballot and presents it to the judges. It may be written or printed, and need have nothing upon it save the words "For prohibition," or "Against prohibition." To apply Section 93 of the election law would substitute for this simple ballot and procedure the more complicated official ballot and procedure prescribed for casting the official ballot, and would thereby "interfere" with the local option law in that it prescribes a different form of ballot and impose additional burdens upon the exercise of the elective franchise.

We conclude that the official ballot is not required to be used in local option elections, therefore, it was not necessary for the presiding judge to write his name upon the ballot, hence it is of no consequence who wrote it thereon. We do not intend to intimate that the use of the official form of ballot would affect the validity of the election, but we hold that the ballots should have been counted without regard to the name of the presiding judge being on them or not.

The contention that Dean was disqualified to act as presiding judge of that election is based upon the following section: "Sec. 60. No one who holds an office of profit or trust under the United States, or this State, or in city or town of this State, except a notary public, or who is a candidate for office or who has not paid his poll tax, shall act as judge, clerk, or supervisor of any election; nor shall any one act as chairman or as member of an executive comittee either for the State or any district or county who has not paid his poll tax, or who is a candidate for office, or holds any office of profit or trust under either the United States or this State, or in any city or town in this State, except a notary public.

The ground of disqualification urged is that the chairman of an executive committee of a political party is an officer of the State or county. There is nothing in the language of the law or the Constitution to support the contention. Dean was not disqualified to act as judge of the election.