### McCOMBS v. STEVENSON.

### No. 13732.

Court of Civil Appeals of Texas. Dallas.

June 14, 1946.

C. C. Renfro, J. Hart Willis, Neth L. Leachman, Otis Bowyer, Jr., and Max R. Rosenfield, all of Dallas, for appellant.

George Sergeant, Currie McCutcheon, Tom L. McCullough, and J. E. Newberry, all of Dallas, for appellee.

YOUNG, Justice.

Appellant laid claim to the chairmanship of the Dallas County Democratic Executive Committee as a result of the August 1944 runoff election, and here appeals from an adverse judgment of the District Court.

Factual background of the controversy is undisputed and is here summarized: Chas. S. McCombs and W. S. Bramlett were rival candidates for the office of County Chairman in said Democratic general primary. The incumbent, Mr. Bramlett, claiming that he had been elected in the first primary (July 22), refused to yield the office; occupying same and discharging the duties of Chairman until his death in October 1945. Appellee Stevenson was then chosen by the County Committee to fill the vacancy so occasioned; asserting full and complete right to the office as successor to Mr. Bramlett, deceased.

On June 19, 1944, pursuant to Art. 3106, Vernon's Ann.Civ.St., the Dallas County Democratic Executive Committee met for the purpose of making arrangements for holding the forthcoming primary elections, with Mr. Bramlett chairman and presiding. The matter of whether nomination of candidates for County offices should be by majority or plurality vote being considered, the following resolution, offered by Committeeman Stevenson, was unanimously adopted: "Be it resolved by the Democratic Executive Committee of Dallas County, Texas: 1. That in the general primary election to be held by this Committee on July 22,

1944, for the nomination by said party of candidates to run for Precinct, County and District *governmental offices* in those instances where the territorial district limits embrace the territorial limits of Dallas County, or a portion thereof, that no candidate shall be declared elected as the nominee of said party unless he or she shall receive a majority of all of the votes cast in the election whereof such person shall be a candidate. 2. If no candidate shall receive a majority of the votes as prescribed in subdivision 1 of this Resolution, then the two candidates receiving the highest number of such votes in said election, whether the same shall be a tie or not, shall have their names placed upon the ballot as candidates for nomination to run for such office or offices at the runoff, or second primary election to be held on the 26th day of August 1944, and at which election the candidate receiving the highest number of legal votes shall be declared the nominee of said party. 3. If a tie vote result between two candidates at the election mentioned in subdivision 2 of this Resolution, then this committee shall determine by lot or drawing which of the two candidates shall be declared the nominee of said party to run for the office involved in such tie election; it being expressly stipulated that such candidates may be present at such drawing if they so desire." (Emphasis ours.)

On July 29, 1944, the County Executive Committee met to open and canvass returns of the election (first primary, Art. 3124). A subcommittee composed of Homer Fisher, Chairman, and Reuben Young made separate tabulation of votes as to precinct committeemen and County Chairman; and, pertinent here, reported to the whole Committee the following: "For Chairman Democratic Executive Committee, W. S. Bramlett 17,192; Chas. S. McCombs 13,778; W. R. Sessions 8,056." It was then moved by Committeeman Young, duly seconded, that the names of those receiving the highest number of votes for the respective offices (chairman and precinct committeemen) as shown by said tabulation be thereby declared elected; Committeeman Hatfield moving as a substitute that the subcommittee's report relating to election of chairman and members of the Committee be rejected.

On a divided vote the substitute motion prevailed. The Chair then announced that unless the Committee made a canvass of the results of the election held for the purpose of electing a chairman and members of the Committee and declared the result thereof, or unless the Committee adopted or accepted the report of such canvassing subcommittee, that the general Committee would have nothing of record showing the results of election of July 22 for chairman and members of the Committee; suggesting that a motion be made, approving report of the subcommittee and ordering it filed. This motion was then put and unanimously adopted; the canvass of such subcommittee as above set forth showing that for the office of County Chairman, Mr. Bramlett had received a definite plurality.

Committeeman Shor then moved that the two candidates receiving the highest number of votes for chairmanship of the Committee at the July primary be placed on the ballot at the August or runoff primary. At this point Chairman Bramlett stated that he could not be a party to the proceedings proposed by the motion, saying that under previous action of the Committee and the statutes of Texas, those persons who were candidates for membership on the Committee and for chairman thereof, and who had received the highest vote cast at the July 22nd primary election, had been elected; calling attention to provisions of Arts. 3106 and 3118 of the statutes; and reading the Resolution of the Committee, adopted at its meeting of June 19, relating to a majority vote requirement. Motion of Mr. Shor being seconded, Mr. Bramlett declined to proceed and called to the Chair Committeeman Gabe P. Allen, who put the motion which carried on a divided vote, Bramlett then resuming the Chair. A drawing was then held fixing a place on the runoff ballot for the names of W. S. Bramlett and Chas. S. McCombs.

In course of further business, Committeeman Bruce Thomas rose and desired to know where the candidates for precinct committeemen stood as to being elected; whereupon Chairman Bramlett stated that if "you are asking me I advise you the voters elected members of the committee:

and a chairman of the committee at the July 22, 1944 primary election though several of the committee members did not receive a majority vote and no candidate for chairman received a majority vote; all of which is shown by the report of the canvassing subcommittee which we have adopted today." At this juncture, on motion of Bruce Thomas, duly seconded, all precinct committeemen receiving the highest number of votes in the July primary were declared elected.

On September 2, 1944, the Dallas County Democratic Executive Committee met and canvassed the returns of the prior August primary, Mr. Bramlett presiding. The vote cast for County Chairman in said runoff election was: W. S. Bramlett 6,682, Chas. S. McCombs 8,079. All committeemen-elect present were then asked to stand and take the statutory oath of office, in which connection Chairman Bramlett made the following statement, himself being among the number sworn in: "A number of the precinct committeemen only received a plurality vote in the July 22nd primary; that is true of the Chairman. I am now going to ask all of you to stand and take the oath of office, and all of you that received the highest vote in the July 22nd primary election that I have just referred to will stand and hold up your right hands and the Secretary will administer the oath."

A colloquy then followed between Member Shor and the Chair, viz.:

"Mr. Shor: I want to make an inquiry why you had yourself sworn in as a committeeman?

"Chairman Bramlett: I will answer that very briefly. On July 22nd, 1944, we held an election, not to nominate but to elect members of the Committee and a Chairman of the Committee. Under the rules of the party and specifically by statute a plurality vote elects a member of the Committee and a Chairman of the Committee. Those candidates who received, not necessarily a majority vote, but who received the highest vote at that election were elected. The Chairman, that is, the candidate for Chairman, in that election that received the highest vote was elected to office and not nominated to run for office as in the other races. Let's get this over. If there is anyone here that feels aggrieved at my action in taking the oath of office— knowing that I had a right to do so—the remedy is well provided for in our statutes, and nowhere else, and if anyone thus feeling aggrieved desiring to take such action, I want to state now that I will not only speed the matter by waiving service of citation and all process but I will also aid in getting the matter set down for a determination as quickly as possible. I will go further than that. I will challenge and invite such a procedure. I can't be misunderstood, I believe."

Immediately a motion was offered to the effect that Mr. McCombs be declared Chairman of the Dallas County Democratic Executive Committee, whereupon Member Hatfield moved as a substitute that the motion be tabled. With Mr. Roy Coffee temporarily presiding, and after some discussion, the motion to table carried, again by a divided vote.

Mr. McCombs on the same day (September 2) took oath of office before a notary, filing same with Secretary of the Committee.

Appellant's action was both injunctive and in nature of mandamus, invoking provisions of Art. 1735a, Vernon's Ann.Civ. St., seeking a judgment declaring him legally entitled to said office of County Chairman, which relief, upon hearing, was denied. It is now contended that the trial court erred in failing to give affirmative answer to the following controlling questions of law: 1. "Did the Dallas County Democratic Executive Committee take the necessary action to provide for election of the Chairman of the Committee by a majority vote?" 2. "Did W. S. Bramlett by his conduct acquiesce as a matter of law in the action of the Committee in ordering his name and that of Charles S. McCombs placed on the runoff ballot?" We have carefully considered appellant's brief and authorities in light of above recitation of facts and conclude that the trial court did not err in making negative disposition of the quoted matters at issue.

Art. 3102, Vernon's Ann.Civ.St., provides that the fourth Saturday in July,

1926, and every two years thereafter, shall be "general primary election day"; that the person nominated by any political party for State or district office must receive a majority vote; fixing the fourth Saturday in August as the "second primary election," in case of plurality result in July. Only county officers are therefore affected by Art. 3106, reading: "The county executive committee shall decide whether the nomination of county officers shall be by majority or plurality vote, and, if by a majority vote, the committee shall call as many elections as may be necessary to make such nomination, and in case the committee fails to so decide, then the nomination of all such officers shall be by plurality of the votes cast at such election." Art. 3100 defines the term "primary election" as one held by the members of an organized political party for the purpose of nominating the candidates of such party to be voted on at a general or special election, "or to nominate the county executive officers of a party"; and in connection with Art. 3118, setting up the County Executive Committee, it is to be observed that the words "nomination" and "election" relative to chairmanship and precinct committeemen are used interchangeably; the latter Article further stating that the county chairman and precinct officers "shall be elected on the general primary election day," assuming the duties of their respective offices on Saturday following the August runoff primary. From a careful study of the foregoing statutes, along with the committee resolution of June 1944, the conclusions obviously follow that: First. Two classes of candidates are dealt with by the Legislature: (a) Persons contending for party office, who are elected and take office as a result of midsummer primaries; (b) those seeking nomination for governmental office in the July primary, or August runoff (if nomination by majority is required); the successful candidate to run for office in November general election, taking office the January following. Second. Officers of a political party, although provided for by election laws, e. g., Chairman of the County Executive Committee and precinct committeemen, are not to be regarded as public or governmental officers. Koy v.

Schneider, 110 Tex. 369, 218 S.W. 479; Waples v. Marrast, 108 Tex. 5, 184 S.W. 180, L.R.A.1917A, 253; Walker v. Mobley, 101 Tex. 28, 103 S.W. 490; Walker v. Hopping, Tex.Civ.App., 226 S.W. 146. Third. Unless the Committee has made timely decision that a majority vote be necessary to the nomination of "county officers" (Art. 3106), a candidate becomes the nominee by receiving a plurality of the votes cast at the July primary, Cliett v. Williams, Tex. Civ.App., 97 S.W.2d 272; inclusive of County Chairman (assuming but not deciding that, in face of Art. 3118 providing for election of party officers on "general primary election day," the County Committee in its discretion may invoke the majority rule in the election of its chairman). In any event, the committee resolution of June 19 restricted the majority requirement to "governmental offices"; and party officers being excluded therefrom, even under Art. 3106, Mr. Bramlett was elected County Chairman in the July primary by receiving a plurality of the votes cast, unless the Committee by subsequent and legal action has made applicable the majority rule to the leading candidates for County Chairman.

Art. 3106 does not specify when the committee action regarding majority nominations shall be taken, or how the same shall be evidenced. Impliedly, from Art. 3125, such action should precede the "general primary election day." It has been held, however, that majority rule may be ordered even after the first primary, if decision is made prior to official canvass of the returns. Anderson v. Aldrich, Tex.Civ. App., 120 S.W.2d 605; Adkins v. Rawls, Tex.Civ.App., 182 S.W.2d 509; Sartin v. Hudson, Tex.Civ.App., 143 S.W.2d 817. If made *after* said official canvass, the order is manifestly of no effect. The primary election being completed, the law has intervened to fix the rights of any candidate receiving a plurality vote.

So, in the case at bar, the Committee motion to place the two highest candidates on the runoff ballot came *after* the returns of the July primary had been officially canvassed and a clear plurality reported for Mr. Bramlett. The latter's election followed such declaration of result as a mat-

ter of law; there remaining nothing for the Committee to act upon. In other words, all issues involving the office of County Chairman became moot, absent an existing controversy.

■ Wagner v. Yates, Tex.Civ.App., 119 S.W.2d 175, relied on by appellant, is not considered in conflict with above conclusions. There, the resolution providing for majority nominations was with reference to *all* county and precinct offices, which would logically include party offices; while here, the resolution of June 19 limited the provisions of Art. 3106 to governmental offices, the well settled definition of which excludes officers of a party. In the Wagner case the law is correctly stated, "that where the Executive Committee, at the proper time and prior to the first primary, provides for the nomination of county and precinct officers by majority vote (Art. 3106, R.S.1925), no person can be declared to be the nominee of his party for a county or precinct office, unless that person receives a majority of the votes in the first primary." Likewise, the converse is necessarily true that where the Executive Committee prior to the first primary *does not* provide for the election of party officers, then under the Article a plurality must control.

■ Moreover, the record as a whole would indicate that the motion of July 29 was adopted by the Committee under a misapprehension of the legal effect of their earlier resolution under which party candidates were to be elected by plurality and not majority vote; and that when said resolution of June 19 was explained to the Committee, its subsequent action was consistent therewith. For instance, at the September meeting a motion was tabled seeking to declare Mr. McCombs elected County Chairman; he having received a majority in the August runoff. Such result followed the statement of Mr. Hatfield that, in making the July substitute motion, he had not been advised as to the difference, legally, between party and governmental officers or that the June resolution had confined majority nominations to latter class.

That W. S. Bramlett did not, by his conduct, acquiesce in the Committee action ordering his and appellant's name on the runoff ballot, is conclusively demonstrated, we think, by the foregoing findings of fact. On the other hand, the record establishes a continuous protest and determination to insist upon his right to the office. A disclosure of such claim was made in the daily press and to appellant, whose letter to Mr. Bramlett of July 26, admitted knowledge of the position taken and disputing it. He urged friends not to participate in the August runoff and steadfastly performed the duties of Chairman through all material dates mentioned until his death. Even if the issue of estoppel be here raised in fact, it has been decided adversely to appellant with testimony preponderantly in support of the ruling made.

The trial court's judgment is in all respects affirmed.