JACK CARTER ET AL V. HOMER TOMLINSON ET AL.

No. A-2261. Decided February 22, 1950.
Rehearing overruled March 29, 1950.
(227 S. W., 2d Series, 795.)

8

*Ernest May,* of Fort Worth, *George Sergeant,* and *Howard Dailey,* both of Dallas, *Robert W. Calvert,* of Hillsboro, *John D. Cofer,* of Austin, *Robert Lee Bobbitt,* of San Antonio, *Edwin Hawes, Jr.,* of Wharton, *Gilbert T. Adams,* of Beaumont, E. G. *Lloyd, Jr.,* of Alice, *Ed B. Levee, Jr.,* of Texarkana; *Wm. J. Fanning,* Sulphur Springs, *Tom Moore,* of Lockhart, *Jud R. Stewart,* of Strawn, *Truett B. Smith,* of Tahoka, *W. A. Combs, J. Edwin Smith, Jesse Andrews* and *James V. Allred,* all of Houston, and *Tom L. Tyson,* of Corsicana, for petitioners.

It was error for the court to hold that the primary election statutes, including Article 3146, authorized the district court to decide contests within a political party, except for a place on party ticket for public elective office, and to exercise jurisdiction to decide a contest for membership of the State Democratic Executive Committee. Tuck v. Cotton, 175 Ark. 409, 299 S. W. 613; Colegrove v. Green, 328 U. S. 549; North Common School District v. Live Oak County Board, 145 Texas 251, 199 S. W. 2d 764; Ex parte Hughes, 133 Texas 505, 129 S. W. 2d 270.

*Thompson, Walker, Smith & Shannon, Rawlings, Sayers &*

*Scurlock, Frank H. Rawlings, Culbertson, Morgan, Christopher & Bailey, Cantey, Hanger, Johnson, Scarborough & Gooch, Joe G. Montague, Sidney Samuels, Bert Walker, W. S. Margowski, E. G. Aycock, A. B. Culbertson, Charles L. Stephens* and *Gillis A. Johnson,* all of Fort Worth, for respondents.

District court had jurisdiction of suit for damages at law and ancillary jurisdiction to temporarily enjoin defendants to prevent further injury until case could be heard on merits. Federated Ind. Texas Unions v. International Assn., 79 Fed. Supp. 554; Nixon v. Herndon, 273 U. S. 536, 71 L. Ed. 759; Sinclair Refining Co. v. McElree, 52 S. W. 2d 679; City of Dallas v. Wright, 120 Texas 190, 36 S. W. 2d 973; Staples v. State, 244 S. W. 1068; State v. DeGress, 72 Texas 242.

MR. JUSTICE SHARP delivered the opinion of the Court.

This cause involves certain proceedings at the State Democratic Convention held in Fort Worth in September, 1948, whereby the State Convention seated a delegation favorable to petitioners over one favorable to respondents. The convention elected the petitioners Jack Carter and Mrs. J. W. Douglas as Democratic Executive Committeeman and Committeewoman, respectively, from the Tarrant County district. The convention also required each precinct chairman to take a pledge to support the democratic nominees for president and vice-president. Respondents Neville G. Penrose and Mrs. Bennett L. Smith, together with certain parties elected as delegates to the State Convention and certain Tarrant County precinct chairmen, brought suit for an injunction against the petitioners here. The Court of Civil Appeals at Fort Worth affirmed the trial court's judgment granting to certain respondents a temporary injunction. The material facts of this case are set out in the opinion of the Court of Civil Appeals, reported in 220 S. W. 2d 351, and there is no need to further burden this record with a recitation of such facts.

At the very outset we must decide if this cause presents a justiciable matter for the courts, or if the Legislature has taken such jurisdiction away from the courts and lodged the jurisdiction over contests of this character solely within the party convention and other party machinery.

This Court has heretofore passed on the power of the State Democratic Convention to manage its own affairs. Stanford et al. v. Butler et al., 142 Texas 692, 181 S. W. 2d 269, 153 A. L. R. 1054; Seay v. Latham, 143 Texas 1, 182 S. W. 2d 251, 155 A. L. R. 180. The issue involved there was whether the electors

selected by the Democratic Convention held in May, 1944, could be substituted by the Democratic Convention held in September, 1944. In Seay v. Latham this Court held that the State Democratic Convention held in September, 1944, had that power.

The State Democratic Convention held on September 12, 1944, adopted the following resolution:

"Be it resolved that the State Executive Committee direct the presiding officer of each precinct convention and each county convention to require all persons who desire to participate in said conventions to pledge themselves that they will support the nominees of the Democratic party for all National, State and County officials. And if any person declines to so pledge himself, then he shall not be allowed to participate in the convention.

The State Democratic Convention in May, 1948, adopted the following resolution:

"RESOLVED that all members of this Convention, officers and electors, shall be pledged to support all the nominees of the Democratic Party."

In the course of the Democratic Convention in September, 1948, a resolution was adopted, from which the following is quoted:

"(Each) County Chairman shall communicate with each Precinct Chairman in his county, either by registered mail or in person, and secure from such Precinct Chairman a written statement, signed by such Precinct Chairman, stating that such Precinct Chairman is supporting and will continue to support the nominee of the Democratic Party for President and Vice-President, to-wit: Hon. Harry S. Truman and Senator Alben W. Barkley, in the coming general election; and such Precinct Chairmen are hereby required to file such written, signed statement with the chairman of such County Democratic Executive Committee within one week after receipt of such communication from the County Chairman.

"In the event any Precinct Chairman fails or refuses to file such statement with the County Chairman within the time and in the manner above prescribed, then his office shall be and is hereby declared to be vacant and shall be filled as hereafter provided and in the manner prescribed by law; * * *."

■ In 1891 Section 8 of Article V of the Constitution was adopted, which conferred upon the District Court the authority

to try contested elections. Section 8 provides that, "The District Court shall have original jurisdiction * * * of contested elections." This Court held in Odell v. Wharton, 87 Texas 173, 27 S. W. 123, that the foregoing section of the Constitution was not self-executing, because it prescribes no rules by which jurisdiction may be enforced. It was also held that a contested election is not a civil suit, and therefore cannot be tried by the rules applicable to such cases. See also 16 Tex. Jur., p. 138, sec. 113. The power to enact laws regulating contested elections rests with the Legislature, and the statutes enacted must be looked to in order to find the provisions controlling the trial of contested election suits. If such statutes provide a method of procedure, that method is final and exclusive, and the courts are limited to such procedure. 16 Tex. Jur., pp. 142-146, secs. 115 and 116.

At various times the Legislature has enacted many articles of the Statutes relating to elections and contested elections. Among the articles enacted are Articles 3047, 3107, 3118, 3130, 3134, 3137, 3139, 3146, 3147, 3148, 3152, and 3156. Article 3107 reads:

"Every political party in this State through its State Executive Committee shall have the power to prescribe the qualifications of its own members and shall *in its own way determine who shall be qualified to vote or otherwise participate in such political party;* provided that no person shall ever be denied the right to participate in a primary in this State because of former political views or affiliations or because of membership or non-membership in organizations other than the political party." (Emphasis ours.)

Article 3118 provides how county executive committeemen shall be elected, and defines their duties.

Article 3134 prescribes how the delegates from the precinct and county conventions may be selected.

The action of the Democratic Convention complained of occurred on September 14, 1948, and this suit was filed in the District Court on October 18, 1948. The provisions of Articles 3148 and 3152, if available, were not invoked, and they pass out of this controversy. Article 3139 prescribes the time when the State Convention shall convene and the duties of the convention.

■■ In Love v. Buckner, 121 Texas 369, 49 S. W. 2d 425, this Court held that the State Executive Committee of a political party could require party voters to make a pledge, before being permitted to participate in a precinct or county convention of the party, to support nominees of such party for President and Vice-president. In construing this article this Court also held in Bell v. Hill, 123 Texas 531, 74 S. W. 2d 113, that the right to determine policies and membership of a political party is to be exercised by the State convention of the party, and cannot be conferred on a State or governmental agency by the Legislature. It was also held in that case that in determining the membership of a political party, *the will of the party is supreme,* and the executive committee is a mere agency, notwithstanding the statute providing that the political party, through the State Executive Committee, shall have power to prescribe qualifications of its members. See also Seay v. Latham, supra. It will be observed that the latter part of Article 3107 prohibits the party from disqualifying its members, under certain conditions, in the following language: "* *; provided that no person shall ever be denied the right to participate in a primary in this State because of former political views or affiliations or because of membership or non-membership in organizations other than the political party." This provision just quoted has been sustained by this Court in Love v. Wilcox, 119 Texas, 256, 28 S. W. 2d 515, 70 A. L. R. 1484.

■ The basic reason for the enactment of Article 3107 and the decisions of this Court upholding the right of the party to demand a pledge of those who vote in the primary elections to support its nominees rests upon the ground that the party has the right to demand that those who vote in the primaries, and those who seek to hold offices within the party, should make a pledge to support the party nominees. Anything less than this would destroy all party unity, loyalty, and discipline in primaries and conventions.

In 1941 the Legislature materially amended certain articles of the Statutes, and repealed others, relating to contested elections. Among the articles amended is Article 3146, which reads:

"Except for a place on party tickets for public elective offices, all contests within a political party shall be decided by the State, District, or County Executive Committee, as the nature of the office may require, each such Committee to retain all such powers and authority now conferred by law."

In the case of Wall v. Currie, 147 Texas 127, 213 S. W. 2d

816, this Court quoted with approval the statement contained in 29 C. J. S., Elections, pp. 121-122, sec. 88, as follows:

"Except to the extent that jurisdiction is conferred by statute or that the subject has been regulated by statute, the courts have no power to interfere with the judgments of the constituted authorities of established political parties in matters involving party government and discipline, to determine disputes within a political party as to the regularity of the election of its executive officers, or their removal, or to determine contests for the position of party committeemen or convention delegates."

■ In the case of Wall v. Currie, supra, Currie claimed that he had been elected chairman of the Dallas County Executive Committee of the Republican party, and that Wall sought to interfere with him in the performance of his duties. The trial court dismissed the cause for lack of jurisdiction. This Court sustained the action of the trial court, and applying the foregoing rule to the facts of that cause held: "It is well established in this state, as well as in a majority of the other states, that officers of a political party, such as members of a party executive committee, are not public or governmental officers, even when provided for by statutory law."

■ In this State political parties have not by law been created either State or governmental agencies, and in the absence of a statute covering the matter, committees of any political party in acting for the party's interests are not acting as officers of the State. And it is held that officers of a political party, such as chairmen of the County Executive Committees and precinct committeemen, although provided for by election laws, are not regarded as public or governmental officers. Koy v. Schneider, 110 Texas 369, 218 S. W. 479, 221 S. W. 880; Waples v. Marrast, 108 Texas 5, 184 S. W. 180, 1917A L. R. A., 253; Walker v. Mobley, 101 Texas 28, 103 S. W. 490; McCombs v. Stevenson, Tex. Civ. App., 195 S. W. 2d 566; Walker v. Hopping, Tex. Civ. App., 226 S. W. 146; 16 Tex. Jur., pp. 56-59, secs. 47-49.

■ By Article 3107 the State Executive Committee of every political party in this State is clothed with the authority to prescribe the qualifications of its own members, and shall *"in its own way determine who shall be qualified to vote or otherwise participate in such political party"*; subject to the exception specified therein. Some confusion arose as to whether the courts or the political party had jurisdiction to settle disputes within the party. This question was definitely settled when the Legislature in 1941 overhauled the election statutes and enacted H. B.

No. 857, Chap. 635, Regular Session 47th Legislature, p. 1400 of the General and Special Laws, repealing certains articles of the Statutes and amending others. Vernon's Ann. Civ. St., Art. 3125 et seq. Article 3146 was one of the articles amended, and it now provides that all contests shall be decided within the political party, "*except for a place on party tickets for public elective office.*" When Articles 3107 and 3146 are construed together, the conclusion is inescapable that respondents were not seeking places on the party ticket for public elective offices, and the action of the convention was final. The rule is well settled in this State that the contest of an election, lacking the elements of a civil suit, is a political rather than a judicial question, and the courts under their general powers, legal and equitable have no jurisdiction of such a controversy. 16 Tex. Jur., p. 135, sec. 111.

■ The District Court did not have jurisdiction to try the matters alleged by respondents relating to the political offices they sought to retain, nor did it have jurisdiction to issue the temporary injunction against petitioners; and the trial court and the Court of Civil Appeals erred in holding that it did have such jurisdiction.

This appeal involves only the issuance of a temporary injunction by the trial court. The right of respondents to recover damages as alleged by them was not determined in the trial court nor in the Court of Civil Appeals, and that issue is not involved here. Upon that issue we express no opinion.

The judgments of the trial court and the Court of Civil Appeals are reversed, the injunction issued is dissolved, and respondents' alleged cause, with the exception of their claim for damages, is dismissed.

Opinion delivered February 22, 1950.

MR. JUSTICE SMEDLEY concurring in part and dissenting in part.

As I understand the opinion of the majority it neither intends nor purports to decide the merits of the questions or controversies in this case, but holds merely that neither the district court nor the Court of Civil Appeals had jurisdiction of the questions or controversies, and so holding reverses the judgments of those courts, dissolves the injunction and dismisses the suit except the part of the suit which seeks recovery of damages.

I can agree with that part of the judgment which dismisses the suit brought by respondents of Class 4 against petitioners Carter and Mrs. Douglas and dissolves the injunction as to those petitioners. This because, and solely because, that part of the suit is in my opinion a "contest" within the meaning of Article 3146 of the Revised Civil Statutes as amended in 1941 which, according to that article, is required initially to be submitted to and decided by the State Executive Committee of the party.

With the following holdings of the majority opinon I do not agree, and from them respectfully dissent: (1) What seems to be the holding that irrespective of Article 3146 the courts have no jurisdiction of the questions involved in this suit because they are political questions for decisions by party officers or representatives only; (2) the holding or the implications of the opinion that the decision by a party committee under Article 3146 of a contest such as that brought by respondents of Class 4 is not subject to judicial review; (3) the holding that the suit brought by respondents of Class 5, the precinct chairmen, to prevent interference with them in holding and performing the duties of the political offices to which they had been lawfully elected, is a "contest" within the meaning of Article 3146 to be determined in the first instance by a committee of the party. In addition to discussing the several questions above mentioned, it will be necessary also to consider the question whether the Convention's resolution of which respondents of Class 5 complain was valid.

By the suit of respondents of Class 4 and the suit of respondents of Class 5 four distinct questions are presented. They are: (1) Must the question as to the validity of the election by the Convention of petitioners Carter and Mrs. Douglas as members of the State Democratic Executive Committee be submitted, or in the first instance, by reason of Article 3146 as rewritten in 1941, to the State Committee; (2) if not, was the election of petitioners Carter and Mrs. Douglas valid; (3) is the question as to the authority of the State Convention to exact of precinct chairmen the pledge set out in the resolution under penalty of removal from office a question that must, under Article 3146, be submitted, or submitted in the first instance, to a party committee; (4) if not, did the State Convention have that authority. These questions are important and should be treated separately and carefully considered. The petition filed in district court by respondents contains many allegations of irregularities in the organization and action of the Convention and failure on the part of those in control of the Convention to comply with provisions of the applicable statutes. These allegations, the truth of

which was admitted in open court by petitioners for the purpose of hearing the application for temporary injunction, are supplemented by elaborate findings of fact made by the trial court. The statement in the majority opinion of the nature of the case and of the facts is so meager that it is impossible to determine from the opinion the full scope and effect of its conclusions. In discussing the several questions it will be necessary to set out something of the nature of the suit and some of the relevant facts.

Taking up the first question, Article 3146 as amended provides that: "Except for a place on party tickets for public elective offices, all contests within a political party shall be decided by the State, District, or County Executive Committee, as the nature of the office may require." Respondents insist that the suit which questions the right of petitioners Carter and Mrs. Douglas to act as members of the State Executive Committee is not a "contest" within the meaning of Article 3146, arguing that petitioners Penrose and Mrs. Smith, Class 4 of respondents, are suing as incumbents and the only lawful members of the State Executive Committee from the Fort Worth Senatorial District, and are seeking to prevent petitioners Carter and Mrs. Douglas, who are mere claimants and pretenders, from interfering with respondents in the performance of their duties. The record shows, however, that petitioners Carter and Mrs. Douglas were elected by the body which assembled at Fort Worth in September, 1948, and acted as the State Democratic Convention, and that respondents by this suit are attacking the validity of the election of petitioners Carter and Mrs. Douglas, alleging irregularities and acts contrary to the statutes in the organization and in the proceedings of the Convention, including the election of petitioners Carter and Mrs. Douglas without recommendation by the delegates chosen by the county convention of the senatorial district. Class 4, respondents Penrose and Mrs. Smith, allege that they were elected as members of the State Democratic Executive Committee at the State Convention in 1946 and still hold their positions and offices because no successors have ever been duly and regularly elected to succeed them. Their suit necessarily involves the determination of the validity of the election of petitioners Carter and Mrs. Douglas. It is therefore a contest within the meaning of Article 3146.

Respondents argue that the contest should not be submitted to the State Executive Committee because that committee, on September 13, 1948, decided in respondents' favor a contest as to whether Class 3 respondents had authority to represent the Tarrant County Senatorial District in the State Convention and

that they should not be required again to submit the same issue to the State Committee. The action taken by the State Committee on September 13, 1948, was a resolution that only the certified delegates from Tarrant, Dallas, Harris, Harrison "and other counties" should be seated and placed on the temporary roll. The Convention's failure to follow that resolution is one of the irregularities of which respondents complain, but the State Committee's resolution was not a decision of the validity of the Convention's election thereafter of petitioners Carter and Mrs. Douglas as members of the State Executive Committee.

Respondents further contend that they should not be required to submit the contest to the State Executive Committee, because those who claim membership of the Committee do so by virtue of the Convention held on September 14, 1948, and would be called upon to determine the validity of the very proceedings upon which their own right to sit depends .Under Article 3139 the State Convention elects a chairman and a vice-chairman of the State Executive Committee and sixty-two members thereof, two from each senatorial district. The record indicates that the same irregularities and the same acts contrary to statutory requirements, of which Class 4 respondents complain in connection with the election of petitioners Carter and Mrs. Douglas, occurred in the refusal to seat delegates and in the election of members of the Executive Committee representing several other counties or senatorial districts. But it does not appear that the same course was followed, or to what extent it was followed, in refusal to seat delegates and in the election of State Committee members from senatorial districts composed of counties other than Tarrant, Dallas, Harris, Harrison and "other counties". And looking to the entire record, including the admitted facts and the trial court's findings, it is in my opinion not shown that so great a number of the committee members elected by the Convention are disqualified as to disqualify the committee from hearing and deciding in the first instance the validity of the election of petitioners Carter and Mrs. Douglas.

Believing that the question as to the validity of the election of petitioners Carter and Mrs. Douglas should first be submitted to the State Executive Committee, I express no opinion on the merits of that question.

The sweeping language of the opinion of the majority seems to comprehend a conclusion that the party committee's decision in a contest, under Article 3146 as amended in 1941, of the validity of the election of a member of the State Executive Com-

mittee is final and not subject to judicial review. With such a conclusion I cannot agree. Looking to the language of the amended article, it provides merely and briefly that the contest shall be decided by the committee. There is no expression of an intention that the committee's action shall be final and not subject to judicial review and no express provision is made for judicial review.

It has long been and is still the settled law of this State, unless the opinion of the majority changes it, that party rights and party nominations and party offices claimed or held under statute law are not merely political rights of which the courts will not take cognizance, but that they are legal rights and that when the action of political parties is regulated by statute law "their action to the extent that it is so governed may be reviewed by the courts *as the only means of giving effect to the sovereign law of the State*". Gilmore v. Waples, 108 Texas 167, 174, 188 S. W. 1037; Love v. Wilcox, 119 Texas 256, 28 S. W. 2d 515, 70 A. L. R. 1484; Clancy v. Clough, 30 S. W. 2d 569.

Election to membership in the State Democratic Executive Committee is governed by statute law, the several articles of the statutes as to the selection of delegates to the State Convention, the organization of the Convention and the manner in which members of the State Executive Committee are recommended and elected. This being true, the question whether a member of the committee has been elected in accordance with that legislation is not a political question, but is necessarily a question for court decision. It does no violence to the terms of Article 3146 as amended to hold its meaning to be that the contests to which it applies must first be submitted to the committee and that the committee's decision is subject to proper judicial review, to the end that such contests may in the first instance be decided by a party forum but allowing resort to the courts for review of that forum's action and thus affording opportunity for effective, that is judicial, enforcement of rights given and regulated by statute law. This construction gives effect to Article 3146 and at the same time permits effective enforcement of rights arising under and regulated by statute. It is unnecessary here to undertake to define either the manner or the scope of the judicial review.

The opinion of the majority seems to reach the further conclusion that, regardless of Article 3146, the courts have no

jurisdiction to decide the controversies in this suit. The opinion accomplishes this by emphasizing the general language of Article 3107 to the effect that political parties through their state executive committee shall in their own way determine who shall be qualified to vote or otherwise participate in the parties, by stressing statements that political parties may govern themselves, by ignoring Gilmore v. Waples, 108 Texas 167, 188 S. W. 1037, and disregarding the settled law of this State as so clearly announced in that decision. Gilmore v. Waples has never been overruled and the soundness of the opinion in that case has never been questioned by this Court. It was approved and followed in Love v. Wilcox, 119 Texas 256, 28 S. W. 2d 515, 70 A. L. R. 1484. Associate Justice Greenwood, who wrote the opinion in Love v. Wilcox, referred to the opinion in Gilmore v. Waples as "the profound opinion of Chief Justice Phillips".

The following brief quotation from the opinion in Gilmore v. Waples is enough to demonstrate that the settled law so well declared there controls the question here under consideration and to show how far the opinion of the majority herein departs from that settled law:

"With our legislation covering the subject, whether a given nomination has been made in accordance with that legislation or in violation of it, presents, not a political question, but, necessary here to undertake to define either the manner or the end, it may appropriately be inquired, have the various statutes in relation to party nominations been enacted in this State if the rights and duties therein defined and the matters they purport to govern still present mere political questions. to be settled alone by party law and in the party forum, and are, therefore, beyond the cognizance of the courts? The very purpose of this legislation was to relieve these matters of their mere political character, as was their nature aforetime, and subject them to the regulation of the statute law. The courts exist only to enforce the law. This includes the statute law. If they have no cognizance of rights arising under a civil statute regulating a political party, upon the ground that the body regulated is political, and, therefore, any question affecting it is also political, though in terms governed by an express statute, it must follow that a political party is beyond the control of the law. But political parties are not beyond the control of the law. When regulated by law, their action to the extent that it is so governed may be reviewed by the courts as the only means of giving effect to the sovereign law of the State. In such case the inquiry is judicial because made the duty of the courts; and the

questions presented are likewise judicial because arising under the written law."

The statutes which regulate the action of the Democratic Party in Texas contain careful and detailed provisions for the method of electing delegates to the state conventions, the organization of those conventions and the recommendation and election of members of the State Executive Committee, and for the election of precinct chairmen by qualified voters of the precincts, the term of office of the precinct chairmen and the duties to be performed by them. The rights arising under those provisions are legal rights and questions whether members of the State Committee have been elected in accordance with that legislation or in violation of it and whether precinct chairmen are entitled to hold and perform the duties of the offices to which they have been elected are judicial questions, questions for determination by the courts, because they arise under the written law.

It is to be observed also that the opinion of the majority seeks by citation of Wall v. Currie, 147 Texas 127, 213 S. W. 2d 816, to support its conclusion that the questions in this case are not for judicial determination. Wall v. Currie has no application whatever to this case. As clearly shown by the opinion, the decision there made applies only to party action of the Republican Party, which had less than 200,000 voters in the last preceding general election. It was held that because the controversy in that case was over a party office and not one provided for or regulated by statute, it was a controversy to be determined within the party and not by a court.

This suit by respondents of Class 5 is not a contest within the meaning of Article 3146. The respondents of that class are seeking to prevent what they allege to be unauthorized and unlawful interference with them in their exercising the rights and duties of precinct chairmen, to which offices they were regularly elected in the general primary election of July, 1948, by the qualified Democratic voters of their precincts. They were elected in accordance with the statute, Article 3118, and under that article and other articles they have important duties to perform during their two-year terms, primarily for the benefit of those who elected them. There is no contest in this suit of their election or of the election of any other parties claiming rights to their offices. The rights which they assert are to hold and exercise their offices without unauthorized interference and without unauthorized removal. These are rights for judicial

cognizance and for judicial enforcement, because they grow out of and are regulated by statutory enactment. Gilmore v. Waples, 108 Texas 167, 188 S. W. 1037; Love v. Wilcox, 119 Texas 256, 28 S. W. 2d 515, 70 A. L. R. 1484.

The material facts as to the suit by respondents of Class 5, admitted by petitioners and found by the trial court, are as follows: The substance of the resolution adopted by the State Convention and of which respondents of Class 5 complain is: The county chairman of each county is required to procure from each precinct chairman of his county a written and signed statement that he "is supporting and will continue to support the nominees of the Democratic Party for President and Vice-President, to wit: Honorable Harry S. Truman and Senator Alben W. Barkley, in the coming general election." In the event any precinct chairman fails or refuses to file the statement within one week after the receipt of the communication from the county chairman, *"then his office shall be and is hereby declared to be vacant"*. The vacancy shall be filed by those members of the County Executive Committee "who have executed and filed such statements of support of the party nominees". Respondents of Class 5 were elected as precinct chairmen at the general primary election in July, 1948, by citizens of Tarrant County who were "duly qualified voters and Democrats". A substantial number of those precinct chairmen, respondent of Class 5, have a present intention (that is, when the resolution was passed and this suit was filed) to vote for Truman and Barkley at the general election. Others of them have the present intention of not voting for anyone at the general election, because they have not supported and do not intend to support the nominee of any other party outside of the Democratic Party, and because of what they believe to be an "irreconcilable conflict arising between the avowed course of the national nominees with respect to the invasion of States' rights through the Civil Rights Program and segregation of races, to which the Democratic Party was committed by tradition as a principal faith of that party, distinguishing it from the Republican Party, as well as on account of the resolution in evidence adopted by the Texas Democratic Party at the May Brownwood State Convention with respect to such matters." The pledge required of the precinct chairmen by the resolution "was not exacted or sought in good faith" for its recited purpose of securing party loyalty. As was well known to those who sponsored and caused the adoption of the resolution, the precinct chairman had no duties to perform between the time

of the State Convention and the date of the general election. And the true purpose of the adoption of the resolution and the exaction of the pledge was "that all, or a large number, of such Class 5 plaintiffs would refuse to comply with such an exaction accompanied by threat; and that many would resign and others would refuse to sign the pledge", and that their offices would become vacant and could be filled by those of the "faction" represented by petitioners.

Petitioners seek to justify the Convention's adoption of this resolution by referring to the broad provisions of Article 3107 that every political party, through its State Executive Committee, shall have power to prescribe the qualifications of its memberes and shall in its own way determine who shall be qualified to vote or otherwise participate in the political party, and they make the argument that the Convention was authorized to adopt the resolution because there is nothing in the statutes expressly prohibiting the action.

Article 3107 is a part of the chapter of the statutes on the subject of nominations by parties of 200,000 and more voters, and it must be read in connection with the other articles of the chapter. Its general language is necessarily restrained by the particular language of other articles in the chapter. The particular language of Article 3118 is that the precinct chairmen shall be elected for two-year terms at the general primary election by the qualified voters of their respective precincts. The general language of Article 3107 was not intended and should not be used to nullify the particular terms of Article 3118.

The argument that the Convention had the right summarily to remove precinct chairmen from their offices because there is no express prohibition in the statutes of that kind of action is not a valid argument. The statute, Article 3118, in giving to the qualified Democratic voters of the precincts the authority and the right to choose by election those who will serve them for two years as precinct officers, prohibits, by necessary implication, the State Convention from removing those officers. What becomes of local government as to those local officials, set up and defined by Article 3118, if the will of local Democrats and their lawful selection of their officials can be defeated by the State Convention's summary removal of the officials?

It must be conceded that party action, whether by convention or by committee, when the party is regulated by statute, must be reasonable and in good faith. Seay v. Latham, 143

Texas 1, 8, 182 S. W. 2d 251; Love v. Buckner, 121 Texas 369, 371, 49 S. W. 2d 425.

The resolution seems clearly to be unreasonable in view of the facts of this case and as applied to respondents of Class 5. The resolution is not a direction to the county committees or to the county chairmen to inquire into the party loyalty of the precinct chairmen, giving them opportunity to be heard and to give evidence that they are Democrats or that they intend to support the nominees at the November election. It is not even a warning that they will be removed if they do not make that proof. It does not direct the local committee to remove them. By peremptory terms the resolution prescribes the pledge to be taken and requires it to be signed and filed within a week, and it undertakes to make the resolution self-executing after adjournment of the convention by providing that if any precinct chairman fails or refuses to sign the pledge within the time specified "his office shall be and is hereby declared to be vacant". The resolution required the pledge of those of Class 5, a substantial number of the class, who had present intentions to vote for Truman and Barkley at the general election but were unwilling to sign a pledge accompanied by threat of removal. The resolution required the pledge of others of Class 5 who did not intend to vote at all in the general election, because they were Democrats and would not vote for the candidates of any other party but were unwilling to vote for Truman and Barkley, for reasons, by them deemed sufficient, growing out of the resolutions and platform adopted at the National Democratic Convention.

The pledge required by the resolution, in purpose and effect, goes well beyond the uniform test which must be printed on every official ballot in primary elections: "I am a (name of the party) and pledge myself to support the nominees of this primary." If the pledge does not appear on the ballot, it is void and cannot be counted. Article 3110. And yet it is held by this Court that one who takes that pledge is under only a moral obligation which cannot be enforced in court. Westerman v. Mims, 111 Texas 29, 36-38, 227 S. W. 178; Love v. Wilcox, 119 Texas 256, 276, 28 S. W. 2d 515, 70 A. L. R. 1484. In the case last cited it was also held that the Democratic State Executive Committee had no authority to deny participation in the party primary, as a candidate for governor, to one who was willing to take the test prescribed by Article 3110 and "to comply with the pledge contained in that test to the utmost of conscience and good faith", but was unwilling to take the additional pledge

which the committee sought to require that he would support all nominees of the Democratic Party during the year.

The pledge sought to be exacted in the resolution here under consideration is that the precinct chairman *is supporting and will continue to support* the nominees of the Democratic Party for president and vice-president. It is not a test, as that required by Article 3110, to evidence qualification to vote in the primary election or to become a candidate of the party. It is sought to be required of precinct chairmen long after their election and as a condition to their continuing to hold the offices to which they have been elected. And so it is an effort to impose after election an additional qualification for the office. The pledge set out in Article 3110 is required of all participants in the primary election, voters and candidates. "The power to pass on the sincerity of the candidate's pledge and to endorse or condemn his party record is to be exercised by the party voters." Love v. Wilcox, 119 Texas 256, 278, 28 S. W. 2d 515, 70 A. L. R. 1484. The precinct chairmen's party membership and party loyalty were determined by their election in the primary where they and those who voted subscribed to the statutory test. Their summary ejection, by means of the resolution, from the offices to which they had been elected would nullify the statute under which they were lawfully elected and would defeat the will of the Democratic voters of their precincts.

As above shown, respondents are entitled to judicial action to prevent the enforcement of the resolution against them, because Article 3118 by necessary implication forbids summary removal by the Convention of precinct chairmen lawfully elected, and further because the resolution is, under the facts of this case and as applied to respondents of Class 5, unreasonable. For a third reason respondents of Class 5 are entitled to injunction to prevent interference with them by enforcement of the resolution. It is in the fact, alleged in the pleadings and admitted in open court and found by the trial judge, that the resolution was not adopted in good faith. Seay v. Latham, 143 Texas 1, 8, 182 S. W. 2d 251. The substance of the allegation and the finding has been stated above. It is in brief that the resolution was not adopted in good faith to secure party loyalty, but was merely a part of the purpose to "purge" the party of those who did not adhere to petitioners' political philosophy.

Love v. Buckner, 121 Texas 369, 49 S. W. 2d 425, relied upon by petitioners, held that it was not beyond the power of the Democratic State Executive Committee to require persons seeking to participate as delegates in county conventions, held to

select delegates to the State Convention, at which delegates to the National Convention were to be selected, to take a pledge to support the nominees of the party for president and vice-president by voting for the Democratic electors. The instant case is not one in which a test is prescribed for eligibility to sit in a party convention or to become a candidate for party office. The pledge in this case was sought to be exacted from respondents of Class 5 for the purpose of removing them from offices to which they had been elected at a primary election in which they and those who elected them took the statutory pledge.

Petitioners cite Scurry v. Nicholson, 9 S. W. 2d 747, as decided by the Court of Civil Appeals. That court held that the Democratic County Executive Committee had the right to oust Nicholson, who had been elected to membership on that committee and who thereafter refused to take a pledge required of him by the committee that he would support the election of Alfred E. Smith as president and all other nominees of the party. There are at least two important points of difference between that case, as decided by the Court of Civil Appeals, and the instant case. They are, first, that it was shown as a fact in that case that Nicholson admitted and frankly stated that he would not support Governor Smith and that he was a member of a political organization known as "Anti-Smith Democrats". The second is that in that case the ouster of the local party official was by the local committee. That case came to this Court, which did not pass upon the right of the county committee to oust one of its members. It was held merely that the district court should have sustained a general demurrer to the plaintiff's petition because the plaintiff sued only Scurry and complained not of his conduct but only of acts of the county committee. Nicholson v. Scurry, 119 Texas 250, 28 S. W. 2d 512.

If precinct chairman may be removed by party action after they have been elected, the power to remove them should rest in local representatives of the party rather than in the State Convention. These respondents were elected for two-year terms by the Democratic voters of their precincts. Article 3118. There is no statute providing for their removal.

The general rule is that when the term of office is not fixed by law, the power of removal is incident to the power to appoint. 43 Am. Jur., p. 31, Sec. 183; 46 C. J. p. 985, Sec. 146. There is the further rule that appointments for a fixed term of years cannot be terminated except for cause. 43 Am. Jur., p. 32, Sec. 183. And another that when an officer holds for a definite term he is entitled to notice and hearing in order that he may have

opportunity to defend, the statute not providing otherwise. 43 Am. Jur., p. 51, Sec. 212. According to these settled principles, the State Convention would not have the authority to remove the precinct chairmen, and certainly could not remove them summarily and without hearing.

The implication from the statutes is that, if there is authority to remove these party officers, it is in the County Committee and not in the State Convention. While this suit by the precinct chairman is not a contest under Article 3146, it is to be observed that that article in providing for contests specifies that contests shall be decided "by the State, District, or County Executive Committee, as the nature of the office may require". Article 3118, which provides for election of precinct chairmen, also provides that "any vacancy in the office of chairman, county or precinct, or any member of such committee (referring to the County Executive Committee) shall be filled by a majority vote of said executive committee".

These two articles manifest the intention of the legislature to place control of local party officials in local party representatives. The entire plan of the statutes regulating the Democratic Party is to construct the party organization from the bottom upwards, in order that the qualified voters of the party in the precincts and counties may select those who shall act for them as local party officers and as delegates to county and state conventions, instead of permitting party leaders to construct the party organization from the top downwards. Authority in the State Convention summarily to eject party officials who have been duly elected by local party members would be quite inconsistent with the entire plan of the statutes and with the legislative intent manifested by the statutes. 9 R. C. L. p. 1088, Sec. 97; People v. Democratic General Committee, 164 N. Y. 335, 58 N. E. 124, 51 L. R. A. 674.

Several statements in the opinion of the majority may appear to express opinions on the merits of the questions in the case. They are to be taken, however, as intended to support the conclusion that the questions are not for judicial determination and so not within the jurisdiction of the Court, for the Court could not hold that it has no jurisdiction of questions and at the same time express its opinion on them.

The part of the judgment of the trial court and of the Court of Civil Appeals which enjoins petitioners from seeking to declare vacant the offices of the respondents of Class 5, the precinct chairman, from interfering with them in the performance

of the duties of their offices and from seeking to remove them therefrom, should be affirmed.

Opinion delivered Feb. 22, 1950.

Rehearing overruled March 29, 1950.